**Billie R. WEBER and Carolyn Weber, Plaintiffs-Respondents,**

v.

**Jack JOHANNES, Thomas Cantrell and Mary Carolyn Johannes, Trustee for Nicholas S. Johannes, Jane H. Johannes, Annette J. Johannes and Jack Alan Johannes and Nicholas S. Johannes, Jane H. Johannes, Annette J. Johannes, Jack Alan Johannes and Bess J. Johannes and her spouse, their unknown heirs, devisees, grantees, grantees assignees, donees, legatees, administrators, executors, guardians, mortgagees, trustees and legal representatives and all other persons, corporations or successors claiming by, through or under them, Defendants-Appellants.**

**No. 13042.**

Missouri Court of Appeals,
Southern District,
Division Two.

May 15, 1984.

Motion for Rehearing or to Transfer Denied June 20, 1984.

Vernie R. Crandall, Crandall, Crawford & Crandall, Carthage, for defendants-appellants.

William J. Lasley, Flanigan, McCanse & Lasley, Carthage, for plaintiffs-respondents.

HOGAN, Judge.

By an amended four-count petition filed May 16, 1980, plaintiffs sought: 1) to quiet title to a particularly described tract of realty located in the north one-half and part of the southeast quarter of Section 2, Township 27 north, Range 31 west in Jasper County; 2) to eject defendants from part of the premises particularly described; 3) to recover for wrongful removal of timber from part of the tract claimed by the plaintiffs, and 4) to replevy 25 head of cattle. By amended answer filed, incorporating a counterclaim asserted in an abandoned answer, defendants put the cause at issue. On May 25, 1982, the cause was tried to the court sitting without the aid of a jury. The trial court found for the plaintiffs and against the defendants on the first three counts; it further found for the defendants and against the plaintiffs on the fourth count. Defendants appealed. As presented in this court, the case is a boundary dispute between two adjoining riparian landowners.

Plaintiffs' evidence was that the incident out of which this controversy arose developed in September 1974. For some time, the location of the boundary between plaintiffs' and defendants' farms—a creek which begins as Jones Creek and becomes Jenkins Creek—had been in dispute.

Plaintiff Billie Weber discovered that chain saws were being operated on what he considered the lower end (south part) of his property. Upon inspection of the area, Weber discovered some men cutting trees. Weber asked who had given the men permission to cut the trees. He was told "Johannes." Weber told the men the trees were on his property and that they should quit cutting the trees. The men said they would do so. Trees were down in several areas, but they were all taken from land which lies north of the Jones-Jenkins Creek. The men left, stating they would contact Mr. Johannes.

The parties had had some problems with stray livestock before the logs were cut. At that time plaintiff Billie Weber and Johannes had a conversation, in the course of which Weber had asked Johannes "... if we could get together, survey [their boundary], get some fence built, [and] keep the cows on the sides they belong[ed]." Johannes' response was " '[n]o survey and no fence.' " After the timber was cut, the plaintiffs took counsel and filed suit, but, according to Weber, Johannes continued to cut timber from the disputed tract.

After suit was commenced, the controversy remained more or less dormant for a considerable period of time. Plaintiffs finally obtained new counsel, the pleadings were amended, and by May 1981 the cause stood at issue. For whatever reason, the case was not tried until May 25, 1982.

Upon trial, the parties concentrated their attention and their proof upon the location of Jones and Jenkins Creeks. The plaintiffs relied heavily on the testimony of a licensed surveyor, his survey, and aerial photographs obtained from the Department of Agriculture. We have concluded that some kind of reproduction of the survey is essential to an understanding of this opinion. Lacking the means to undertake a literal reproduction of the survey—received

as plaintiffs' exhibit 1—we include a rough sketch simply to illustrate the thrust of the evidence and the conclusions which might be drawn therefrom.

To relate the sketch to the controversy, we may explain that the unbroken line which runs irregularly from the northwest corner of the SW ¼ of the NW ¼ to a point on the east section line in the SE ¼ of the SE ¼ of the section represents Jones Creek from the point of beginning to the point marked "JJ"; from "JJ" to the east section line, it represents Jenkins Creek. The "disputed area," a term coined by defendants' counsel, represents the area from which the timber was taken and concerning which some of the muniments of title are ambiguous. The "X" represents a former confluence of Jones and Jenkins creeks hypothesized by the defendants.

The competency of the survey in general and the testimony of the surveyor, a Mr. Walker, is challenged by the defendants on this appeal. As briefed, the contention is merely that the trial court received speculative evidence, but in view of the parties' and the trial court's reliance on the survey, it is appropriate to note that the survey was made by or under the supervision of a licensed surveyor, whose

qualifications were admitted by the defendants. A foundation for the admission of the survey was laid by showing that Mr. Walker had been a surveyor for 27 years; he was a registered surveyor; he was familiar with the land he had surveyed, and he had inspected the deed records of the county. Mr. Walker's survey appears to have been made in accordance with the provisions of Chapter 60, RSMo 1978, concerning surveys. In our opinion the correctness of the survey was established by competent evidence, and the statutes do not prohibit the introduction in evidence of properly prepared surveys made by private surveyors or by any public surveyor. *Chostner v. Schrock,* 64 S.W.2d 664, 666[7] (1933); *Hopper v. Hickman,* 145 Mo. 411, 46 S.W. 973 (1898). Further, even private surveyors may testify from surveys they have made, and their evidence is competent; the weight to be accorded such testimony is for the trier of fact. *State v. Turpin,* 196 S.W.2d 798–99[1, 2] (Mo.1946). To answer the specific and very narrow contention made by the defendants, it is sufficient to say that the witness was simply called on to state what he had seen on the ground; under the rule just stated, the trial court properly allowed him to answer.

Points III and IV are directed to the sufficiency of the evidence. As stated, the two combined points are: "The [trial] court erred because its finding and judgment that the survey is the correct boundary of [the plaintiffs'] property is against the greater weight of the evidence because it is in conflict with the testimony of witnesses who lived in the area; owned land in the area; had families owning land in [the] area and who were acquainted with floods which made [the] cut from [the] old channel of Jenkin[s] Creek to Jones Creek, referred to in the deeds in evidence and [plaintiffs'] exhibit 1, from what was the old channel to the alleged present channel. The judgment

is without support as to the location of Jenkins Creek channel from the turn of the century to date as described in the deeds in evidence, and further, the court erred in finding that the alleged Jenkins Creek had always been an overflow channel. [This] particularly is so when consideration is given to exhibit[s] A2–E2 offered in [the] motion for new trial."

Shorn of its redundancy and as developed in the "argument" part of the defendants' brief, these assignments of error amount to an invitation to reverse the judgment of the trial court by reading through and evaluating the parties' deeds much as a title attorney would examine an abstract and furnish a title opinion. Implicit in this argument is the further contention that some of the conveyances in plaintiffs' chain of title should be rejected because parts of the description are latently ambiguous and, taken as a whole, the descriptions of the parties' land, taken from the various deeds, overlap.

We reject the notion that because the description of one of the tracts claimed by the plaintiffs is ambiguous,[1] the deed to plaintiffs must be held to convey no estate whatever. It is elementary that a description in a deed is intended merely to furnish the means of identifying the parcel conveyed. Clark, Surveying and Boundaries § 456 (Grimes ed. 1976). Otherwise put, a description of a particular parcel is sufficient if a competent surveyor can locate the land on the ground. *Daly v. Duwane Construction Company,* 259 Minn. 155, 106 N.W.2d 631, 636 (1960); *Hughes v. Meem,* 70 N.M. 122, 371 P.2d 235, 238 (1962); *Clark, supra,* § 456, p. 564. Although the record is not as clear as it might have been, it is apparent that Mr. Walker did trace the

---

1. We refer to the description of one of the parcels claimed by the plaintiffs, viz., "Also commencing in the center of the channel of Jones' Creek 2½ rods East of the Northwest corner of the West Half of Lot One (1) of the Northeast Quarter, thence up said channel, Southerly to the Junction with Jenkins' Creek, thence Southeast to the mouth of Jenkins' Creek, thence Southeasterly to a point 2½ rods West of the Southeast corner of the West half of said Lot One (1) of the Northeast Quarter, thence East 2½ rods, thence North to the Northeast corner of the said West Half of Lot One (1), thence West to the place of beginning."

ambiguous description quoted marginally during the trial.[2]

■ Neither are we persuaded that older descriptions of the boundary or evidence of a different location of the stream in the past necessarily and completely impeach the evidence of the surveyor and the survey received in evidence. We are cited to *Blumenthal v. Roll,* 24 Mo. 113 (1856), for the proposition that the opinion of a surveyor as to the proper location of a concession or grant is inadmissible in evidence to determine such location. What the court actually held, 24 Mo. at 117, was that a competent surveyor should not be allowed to give his opinion as to the location of the boundary, but should state facts, leaving the court and jury to draw proper inferences from those facts. That is all that was done here.

■ We agree that plaintiffs' survey and the surveyor's evidence was subject to contradiction by any competent species of proof. *State ex rel. Reynolds County v. Riden,* 621 S.W.2d 366, 368–69[4] (Mo.App. 1981). It does not follow that the probative force of plaintiffs' evidence was completely destroyed by the introduction of documentary or other proof of another location of the boundary at a much earlier time, as defendants argue. With respect to this particular argument in the circumstances presented, the logic of the Mississippi court in a similar case is compelling:

"... The survey as made does correspond ... with old section corners as described in the field notes. In such a situation we must remember that the original government surveys in that district and the field notes thereof were made more than one hundred years ago, and that it is a matter of common knowledge that rivers and streams ... change their courses in many places by distances

more or less, from a few feet to many feet .... The fact that a survey now made does not precisely check with the location of a stream as shown on the field notes a hundred years old is not enough to discredit the present survey." *Wroten v. Fenn,* 203 Miss. 361, 35 So.2d 534–35[1, 2] (1948). Assuming with much reserve that this court has the authority to reevaluate the evidence under the mandate of *Murphy v. Carron,* 536 S.W.2d 30, 32[1–3] (Mo. banc 1976), we would be obliged to reject the argument that plaintiffs' proof was so lacking in probative force that it did not support the judgment rendered.

A further sufficiency question is whether, assuming the channel of Jenkins Creek shifted to the southwest at some time in the past, that change was gradual and imperceptible, or sudden and avulsive.

Along the northeast side of the "disputed area" there is a series of pools or depressions which the defendants maintained, at trial time, had originally marked the course of Jenkins Creek from the point marked "X" to the present thread of Jones Creek to the southwest. Such a change of course would comport with one or more of the ambiguous parts of descriptions found in both parties' chains of title. As part of their brief and argument, the defendants contend that the trial court's judgment was contrary to the greater weight of the evidence to the point that this court should entertain a firm belief the judgment was wrong.

■ The principles upon which the defendants rely are well established and not in dispute: Where a nonnavigable stream of water constitutes the dividing line between two tracts of land, the possessor on either side, absent contrary restrictions or reservations in his deed, holds to the center

---

**2.** "Q. Now, there is also a description ... this description that runs down south and southeast along Jenkins Creek? A. Right. Q. Runs up the channel in a southeast direction, finally ending up at a point two and a half rods west of the west half of Lot 1, would you point out where that corner would be? A. (Witness complies).... Q. And it does follow the course of Jones Creek and mentions Jenkins Creek too

... and also traveling in a south and southeast direction ...? A. That is correct." The course of the ambiguous call was "marked in red." There is a great deal of red, yellow and black marking on the plat, and of course we cannot ascertain the point indicated by the notation "witness complies." It is clear nonetheless that the course of the ambiguous call was indicated for the trial court.

or thread of the stream; where a subsequent change in the course of the stream is by the slow and gradual process of accretion, the boundary line changes with the stream, entitling the one owner to whatever is added to his land by reason of accretion; but where the stream changes its course suddenly or in such a manner as not to destroy the identity of the land between the two channels or to render it incapable of identification, the process is not one of accretion, and the boundary line remains as it was before the change in the channel of the stream. *Brown v. Wilson*, 348 Mo. 658, 665, 155 S.W.2d 176, 179[5–7] (banc 1941). As we are given to understand, defendants claim is that the slough or overflow channel which is shown on our sketch marks the channel of Jenkins Creek as it ran when the deeds were executed, principally because such an hypothesis corresponds with some of the ambiguous descriptions found in the plaintiffs' deeds, and because some witnesses testified that the slough—shown here as plaintiffs' exhibits 10, 11, 12 and 15—was the "old" channel of Jenkins Creek.

The difficulty with this argument is that even if the evidence be taken most favorably to the defendants' position, it does not demonstrate a sudden, avulsive change of course which would locate the boundary of plaintiffs' land along the thread of the slough, if it had one, thus comporting with defendants' idea of the north boundary of their land. Plaintiff Billie Weber's testimony indicated that the series of potholes had "trees growing there that would probably be thirty-five to forty years old." Mr. Walker indicated that the slough, or "old channel" was simply an overflow basin which filled occasionally when the area was flooded.

The testimony of witness Clarence Greenwood tended to support defendants' theory that the channel of Jenkins Creek changed suddenly in 1932 or 1933. Greenwood's opinion was that the channel had shifted "maybe 300 or 400 yards. On the other hand, witness Harlon Hoofnagle, who had lived on part of the defendants' land before the defendants purchased it, testi-fied that the channel of Jenkins Creek had changed, but on cross-examination, further testified "It [the channel] has changed some, yes, [but] it didn't change all at once, I don't think."

■ We might continue at length illustrating the equivocal nature of the evidence concerning a possible change in the channel of Jenkins Creek, but for our purposes, it is sufficient to say there was no evidence, testimonial or documentary, which would compel the conclusion that the channel of Jenkins Creek changed suddenly and avulsively, or even that the "old channel" was ever a watercourse. This argument, to the extent it is articulated or deducible from defendants' brief, is without merit.

■ To turn abruptly to a more conventional view of the sufficiency of the evidence, we observe that the trial court quieted the title to a 163.65-acre tract of land lying partly in the NW ½ and partly in the SE ¼ of Section 2, Township 27 N, Range 31 W, and entered judgment in ejectment accordingly. Ordinarily a plaintiff in a quiet title action need not show good title against the whole world but only against the named defendants. *Ritter v. Pattonville Consolidated School Dist. R–3*, 318 S.W.2d 304, 306[1] (Mo.1958). However, when the controversy is a boundary dispute and the ejectment remedy is the means to quiet title to the boundary, then plaintiff must prove that the land sought to be repossessed is within the confirmation of his deed description. *Nichols v. Tallman*, 189 S.W. 1184, 1185[1] (Mo. 1916); *Carender v. Barry*, 623 S.W.2d 73, 75 (Mo.App.1981). In the case at hand, plaintiffs introduced their deeds; they had the competent evidence of a licensed surveyor; they introduced and the trial court properly received a competent, though unofficial survey. Their evidence, as we have been at some pains to demonstrate, was subject to contradiction by any competent species of proof, but if it was accepted by the trial court, it was sufficient to sustain the plaintiffs' burden and sufficient to warrant entry of the judgment which was en-

tered. *Quisenberry v. Stewart,* 219 S.W. 625, 626[1] (Mo.1920).

█ The defendants have briefed two points which may be disposed of summarily. They complain that the trial court abused its discretion by refusing to grant a new trial and by refusing permission to reopen the trial, as permitted by present Rule 78.01. The point is pecularily without merit in the circumstances of this case. This action was commenced in 1975. It had been assigned to the trial judge who heard the evidence for a year before it was brought to trial. Counsel for defendants has stuck tenaciously to his view that proof of the boundary can *only* be made by ancient documents. As we have demonstrated, that view is mistaken, and in our opinion the introduction of further ancient documents, which is what defendants proposed, would have done nothing to clarify the essential question presented, which was the location of Jones and Jenkins Creeks. If the parties had had any genuine desire to resolve their dispute, they could have requested the court to order a survey or resurvey as provided by §§ 60.160 and 60.-170, RSMo 1978. Those statutes exist as a sensible convenience in determining land title disputes. *Wright v. Groom,* 246 Mo. 158, 151 S.W. 465 (1912). The defendants are in no position to complain.

█ A further point is that the trial court erred in allowing plaintiffs treble damages for the timber taken from the "disputed area." We decline to discuss the point at length. The point is controlled by what this court held in *Sample v. Reinhard,* 253 S.W. 180, 181[3] (Mo.App.1923). The evidence for the defendants tended to show they had probable cause to believe they were not cutting timber on land which belonged to the plaintiffs, but the evidence for the plaintiffs was to the contrary, and since the burden of establishing probable cause was upon the defendants, we cannot say the judgment was not justified.

We find no error materially affecting the merits of the action; accordingly the judgment is in all respects affirmed.

MAUS, P.J., and PREWITT, J., concur.

## ON MOTION FOR REHEARING OR TRANSFER

PER CURIAM:

Defendants have filed a particularly vigorous motion for rehearing, calling our attention to the fact that the trial court found for the plaintiffs only on Counts 1, 2 and 3 but found for the defendants on Count 4, the count in replevin. The trial court did indeed so find, and we have amended our opinion accordingly.

Defendants also assert that by our diagram, we have given the plaintiffs title to land they were not claiming, and expansively assert, on that basis, that the plaintiffs have been given more relief than they asked for. This assertion misinterprets the opinion and the force of the trial court's judgment.

The plaintiffs put the title to their entire tract in issue and were entitled to a full adjudication of the rights of the parties in and to the whole tract and it was the obligation of the court to declare the "better right" in and to the whole tract. *Stottle v. Brittian,* 459 S.W.2d 310, 312–13[2] (Mo.1970); *Evans v. Brussel,* 300 S.W.2d 442, 444[3] (Mo.1957). Such is the language of the statute. Section 527.150.2, RSMo 1978. The judgment adjudicates title to 163.65 acres located in the north half and the southwest quarter of Section 2.

Our innocently-meant diagram adjudicates nothing. The motion for rehearing is denied; the motion to transfer is denied.

All of the Judges concur.