Louis R. SZOMBATHY, et al.,
Plaintiffs-Respondents,

v.

SHELL OIL COMPANY,
Defendant-Appellant.

No. 47800.

Missouri Court of Appeals,
Eastern District,
Division Two.

July 3, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 28, 1984.

Application to Transfer Denied
Oct. 9, 1984.

*v. Finnell*, 280 S.W.2d 110, 114[8–11] (Mo.1955).

Ziercher, Hocker, Human, Michenfelder & Jones, Clayton, for defendant-appellant.

Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, for plaintiffs-respondents.

PUDLOWSKI, Judge.

Respondents Louis and Alfred Szombathy sued for injunctive relief to prohibit appellant Shell Oil Company from trespassing on property claimed by respondents. The trial court sitting without a jury entered judgment for the respondents, granted them a fee simple title to the disputed property, and permanently enjoined appellant from asserting any rights over the property. We affirm.

The following facts were largely stipulated by the parties before the trial court.

The disputed property, which abuts the south edge of Airport Road in St. Louis County, Missouri, is an almost triangular sliver of land wedged between real property owned by the appellant and respondents. Appellant owns property just south of the disputed tract at the southeast corner of the intersection of Airport and North Hanley Roads. Respondents own property immediately to the west of and adjoining appellant's property. Respondents also own property to the north and across Airport Road from the disputed tract.

Originally, John and Katherine Dowling owned the disputed tract. This land then was part of a 96 acre tract in Sections 3 and 10, Township 46, North Range 6 E., St. Louis County, Missouri. The Dowlings la-

ter conveyed the entire tract to Protective Realty Company.

On May 1, 1914, Protective Realty recorded the Kathmar subdivision plat in the western part of Section 10. The northern boundary line of this plat was a line forty feet north of and parallel with a line running eastwardly from the northwest corner of Section 10 and perpendicular with the western line of Section 10. Appellant Shell Oil presently owns Lot 7, Block 5 of this plat.

On June 15, 1917, Protective Realty recorded the Kathmar First Addition, a subdivision in the western part of Section 3. This plat, like the original Kathmar subdivision plat, was part of the original Dowling tract. The southern boundary line of Kathmar First Addition was the north line of Genevieve Avenue.[1]

On July 10, 1918, Protective Realty conveyed by general warranty deed 30.185 acres to Claude and Rosa Hutcherson. This property included Lots 6, 7, 8, 9, 10 and 11 of Kathmar First Addition, together with all the land north of Genevieve Avenue, but excluded Lots 1, 2, 3, 4 and 5 of Kathmar First Addition.

On May 15, 1920, Joseph and Frances Szombathy, parents of respondent Louis Szombathy, acquired by general warranty deed six acres of land from the Hutchersons. This property ran 272.78 feet along the north line of Genevieve Avenue, was located in the southeast portion of the 30.185 acres purchased by the Hutchersons, and was across Genevieve Avenue from all of Lot 7 and part of Lot 6, Block 5 of Kathmar subdivision.

On December 1, 1922, a group of property owners, including the Szombathy family, conveyed to St. Louis County by quitclaim deed their interest in Genevieve Avenue. Thereafter, St. Louis County accepted and maintained Genevieve Avenue as a public road. Later, the City of Berkeley accepted and maintained it.

In a separate transaction dated July 19, 1928, respondent Louis Szombathy conveyed by quitclaim deed to St. Louis County a strip of land fifty feet wide for the purpose of establishing and maintaining another public road. This strip became part of the initial Airport Road and was taken entirely from the Szombathy property north of Genevieve Avenue. In 1968, St. Louis County further condemned an additional easement and took a fee simple title to a triangular tract of land located between Genevieve Avenue in the south, Airport Road in the north, and Hanley Road on the east. Later, St. Louis County conveyed this tract to St. Louis County Realty Company, which subsequently conveyed it and Lot 7, Block 5 of Kathmar subdivision to Shell Oil on September 28, 1981. Shell Oil purchased the land to build a gasoline service station.

Meanwhile, on January 3, 1972, the City of Berkeley vacated Genevieve Avenue. Within a month of the street's vacation, respondents erected iron posts around the disputed property. They also utilized the tract to accommodate parking at Airport Hall, a banquet facility owned by them.[2]

Respondents brought this action when Shell Oil began construction of its service station. In early March 1982, Shell Oil entered the disputed tract in order to construct a driveway from Lot 7 to Airport Road. Respondents sought injunctive relief to prohibit Shell Oil from trespassing on the disputed tract of land. They claimed ownership on two grounds: (1) the reversion to their property across Airport Road of part of the north half of Genevieve Avenue which was vacated in 1972; or (2) by adverse possession. Shell Oil premised its claim upon the general warranty deed which conveyed the tract to it. The trial court sitting without a jury entered judg-

---

1. The north line of Genevieve Avenue is the selfsame northern boundary line of the Kathmar subdivision plat.

2. In 1943, respondent Louis Szombathy purchased Lot 6 of Kathmar subdivision. Thereaft-er, he built the building which is presently named "Airport Hall." This building abuts appellant's Lot 7 to the west. It also shares a three foot common boundary with the disputed tract.

ment for respondents but did not specify the grounds on which its judgment was based. The trial court granted respondents a fee simple title in the disputed property, made null and void all deeds of record to the disputed property from December 1, 1922 to August 16, 1983, permanently enjoined Shell Oil from asserting any rights over the property, and ordered Shell Oil to restore the disputed tract to its former condition.

Shell Oil now appeals the trial court's judgment vesting respondents with fee simple title to the disputed property on two grounds. First, appellant argues the trial court erroneously applied the law on respondents' reversion claim. Second, appellant contends there was no substantial evidence to support respondents' adverse possession claim.

■ We address respondents' claim of adverse possession.

Appellant argues the trial court erred in quieting title to the disputed tract in respondents for the reason no substantial evidence was adduced of actual, open and notorious, and continuous possession for a period in excess of ten years. Appellant argues respondents' actions were only insignificant and inconspicuous intrusions, which were insufficient to satisfy the requisite elements of adverse possession. We disagree.

In this court tried case, we must sustain the judgment of the trial court "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). In the present case, neither party made a request to the trial court for findings of fact or conclusions of law. In such circumstances, "all facts are presumed found in accord with the judgment, and the judgment is to be upheld under any reasonable theory presented and supported by the evidence." *Lohrmann v. Carter*, 657 S.W.2d 372, 376 (Mo.App.1983). Further, we must accept as true all evidence and permissible inferences favorable

to the prevailing party and disregard any contradictory testimony. *S.G. Adams Printing v. Central Hardware Company*, 572 S.W.2d 625, 628 (Mo.App.1978).

In an adverse possession action, the claimant has the burden of proving by the preponderance of the evidence the existence of each and every element of adverse possession for the entire statutory period. "He must show actual, hostile, i.e., under a claim of right, open and notorious, exclusive and continuous possession of the property for ten years." *Teson v. Vasquez*, 561 S.W.2d 119, 125 (Mo.App.1977). However, once the claimant has made a prima facie case on the issue of adverse possession, the burden of going ahead on that issue shifts to the opposing party. *J.C. Nichols Company v. Powell*, 641 S.W.2d 780, 782 (Mo. App.1982).

■ Our review of an adverse possession case is guided by the fact that each piece of property is unique. What may satisfy the requirements for adverse possession in one case may not satisfy the requirements in another. "Thus, in determining whether the facts in evidence authorize a finding that the elements of adverse possession have been satisfied, each case must be decided in light of its own unique circumstances. Much depends on the location, the character and the use to which the land in question may reasonably be put." *Teson v. Vasquez*, 561 S.W.2d at 125.

■ On appeal, Shell Oil argues respondents failed to demonstrate actual possession of the disputed land. We disagree. To make plain actual possession, the claimant must present his ability to control the land and his intent to exclude others from such control. *Teson*, 561 S.W.2d at 126. Actual possession may be shown by continual acts of "occupying, clearing, cultivating, pasturing, erecting fences or other improvements and paying taxes on the land." *Id.* In the instant case, respondents clearly maintained actual possession of the disputed tract for at least ten years until appellant Shell Oil entered the tract. The City of Berkeley vacated Genevieve Avenue on

January 3, 1972. Thereafter, respondent Alfred Szombathy surrounded the disputed land with iron posts.[3] In April 1972, Alfred Szombathy hired an engineering firm which prepared a survey of the tract and placed surveyors stakes on the property. Moreover, respondents made repairs on the pavement, replaced missing posts, mowed the grass, kept the drainage ditch open, picked up debris, and cleared ice and snow over the entire ten year statutory period.[4] Respondents also utilized the small tract to accommodate parking at Airport Hall.

■ Respondents also exerted hostile possession of the disputed tract. To demonstrate hostile possession, the claimant must occupy the land with the intent to possess it as his own. *Id.* at 127. Respondents met this burden by staking off the land in a manner to separate the tract from the surrounding property.

■ Similarly, respondents' possession of the disputed property was open and notorious. To satisfy this element, the claimant must show that his possession manifested a claim of ownership which was conspicuous, widely recognized, and commonly known. *Long v. Lackawanna Coal & Iron Company*, 233 Mo. 713, 136 S.W. 673, 681 (1911). His possession must also give the owner "cause to know that an adverse claim of ownership is being made by another." *Porter v. Posey*, 592 S.W.2d 844, 849 (Mo.App.1979). However, "[i]f actual knowledge is not proved then the claimant must show an occupancy so obvious and well recognized as to be inconsistent with and injurious to the real owner's rights that the law will authorize a presumption from the facts that he had such knowledge." *Teson*, 561 S.W.2d at 127. In the instant case, respondents placed iron posts and surveyors stakes around the disputed property. They also maintained the

property, mowed the grass, and cleared ice and snow. In addition for the entire statutory period, respondents instructed patrons of Airport Hall to utilize the disputed tract for parking.

■ Respondents' possession of the disputed land was also exclusive. To demonstrate exclusive possession, a claimant "must hold the possession of the land for himself, as his own, and not for another." *Walker v. Walker*, 509 S.W.2d 102, 106 (Mo.1974). Appellant has not challenged this element on appeal.

■ Finally, respondents' possession was continuous for the entire ten year statutory period. RSMo § 516.010 (1978). Respondents erected posts around the disputed property within a month of Genevieve Avenue's vacation on January 3, 1972. Appellant Shell Oil did not enter the property until March 1982. Moreover, throughout the ten year period, respondents maintained the disputed property and utilized it to accommodate parking at Airport Hall.

Accordingly, we affirm the trial court's judgment vesting respondents with fee simple title in equal shares as tenants in common to the disputed property. We affirm on the theory of adverse possession. Because of the affirmance of this point we need not address respondents' reversion claim.

CRIST, P.J., and SIMON, J., concur.

---

3. Louis Szombathy testified the posts were placed around the disputed tract within a month after the City of Berkeley had vacated Genevieve Avenue. Alfred Szombathy testified he placed the posts on the property within three or four days of the street's vacation.

4. Respondents also testified they maintained all of Genevieve Avenue prior to its vacation by the City of Berkeley. Nevertheless, our review is limited to actions after January 3, 1972. The ten year limitation period does not run against a governmental body. *Brotherton v. City of Jackson*, 385 S.W.2d 836 (Mo.App.1965).