**Richard WHITESIDE, Jr., Evelyn Whiteside, Helen Machir, Jackie Curtis Trail, James Richard Trail, Milroy Whiteside, Joanne Talbot, Sammy Whiteside, Diane Whiteside, Eddie Whiteside, Linda Whiteside, Bobby Whiteside, and Diane Whiteside, Plaintiffs/Respondents,**

v.

**Everett ROTTGER, Trustee Under the Josephine Brooksher Inter vivos Trust, and Joe Brooksher, Defendants/Appellants.**

**No. 67451.**

Missouri Court of Appeals,
Eastern District,
Northern Division.

Dec. 26, 1995.

Edward Joseph Grewach, Troy, for appellants.

David Wayne Suddarth, Troy, for respondents.

RHODES RUSSELL, Judge.

This is an appeal from a judgment in an action to quiet title in a parcel of undeveloped land located in Lincoln County. Plaintiffs are the heirs of Josiah Whiteside, the grandfather of plaintiff Richard Whiteside, Jr. The parcel in dispute is a small portion of property formerly known as Kings Lake. Plaintiffs sued to quiet title in the strip of land which is situated in between two parcels of land owned by the Josephine Brooksher Trust. Defendants are Everett Rottger, the acting Trustee of the Josephine Brooksher Trust, and Joe Brooksher, a beneficiary and remainderman of the Josephine Brooksher Trust. Defendants counterclaimed seeking title to the same parcel by adverse possession. The trial court entered judgment in favor of Plaintiffs and Defendants appealed. We affirm in part and reverse in part.

The controversy involves the ownership of a 18.993 acre tract of land located in Lot 10 of U.S. Survey 1732, Township 50 North, Range 2 East of the Fifth Principal Meridian in Lincoln County. To fully understand the nature of this dispute, we look to deeds executed over one hundred years ago, surveys conducted within this century and the actions of the parties and their predecessors in interest. We attach for illustration only a diagram of the subject property.[1]

1. The diagram is a portion of a licensed surveyor's plat which was entered as Plaintiffs' Exhibit 2. The disputed parcel is indicated by hash marks.

2. The parties cite to authorities noting the general rules of construction when title to property

To begin, in 1889, Josiah Whiteside executed a deed to William Fisse conveying the following:

All of Lot No. Ten in Survey 1732, that lays on the West side of Kings Lake; there being Twenty–One acres, more or less of same, it being land deeded to Josiah Whiteside by Jacob Winter, and so much of the North side of Lot No. Eleven, in Survey 1732 as will make forty acres including the above described part of Lot No. Ten; the said part of Lot No. Eleven to lay in a parallel shape with Lot Ten, all lying and being in Survey No. 1732, Township Fifty, Range Two East, Lincoln County, and State of Missouri.

Then, in 1893, Josiah Whiteside executed another deed to John Gebauer for the following tract:

All of Lot No. 10 in Survey No. 1732, Twp. Fifty, Range 2 East in Lincoln County and the State of Missouri, that lays on the EAST side of Kings Lake, there being thirty acres, more or less. The top of the Lake Bank on the East side of Kings Lake being the West line of said land, it being part of the land deeded to me by Jacob Winter.

It is the parcel of land situated in between what is referred to as the west and east banks of Kings Lake that is in dispute. It should be noted that while the property is referred to as "Kings Lake," there has not existed a body of water one would commonly call a lake (or any other substantial body of water for that matter). The presence of water on the parcel has varied depending on the land and weather conditions. The only constant water on the property is situated in the drainage canal, which can vary in width from fifty to eighty feet.[2]

William J. Shea, Jr., a licensed surveyor, testified for the Plaintiffs. Shea surveyed the property at issue upon request by plaintiff Richard Whiteside, Jr. He testified that before conducting the survey he referred to

describes a body of water as a boundary line. Such rules of construction, however, are inapplicable here because the boundary lines of the disputed parcel are not tied to a body of water but to stationary monuments.

several documents to familiarize himself with the property, as is typically done before going onto the property. Shea looked at a survey dating back to 1907 on which there was a monumentation noted marking the east bank of Kings Lake. The 1907 survey indicated that a railroad iron marked the east bank. When Shea conducted his survey he, too, encountered the railroad iron marking the east bank. As referenced in another survey, Shea was able to locate another railroad iron representing the west bank of Kings Lake. After surveying the subject property, Shea compiled a legal description of the property, assessing the disputed tract at 18.993 acres. This legal description was marked as an exhibit and entered into evidence and was eventually adopted by the court in its judgment.

Plaintiffs also offered the testimony of plaintiff Richard F. Whiteside, Jr. ("Richard, Jr."). Richard, Jr., age 74 at the time of trial, lived all his life in the area near that in dispute. He acquired title to the land situated just south of the disputed property. His grandfather, Josiah Whiteside, originally owned the whole region consisting of Lots 10, 11 and 12 and deeded select portions pursuant to the aforementioned deeds of 1889 and 1893. That left the remaining adjacent tracts which Richard's father, R.F. Whiteside, Sr., formerly farmed. When Richard, Jr. gained title to the tracts, he also used the property to farm. Richard, Jr. relayed that as a young boy his father showed him the railroad irons marking the boundary lines of the property. It was these railroad irons that formed the boundary lines for the disputed tract, in Richard's mind, and not any body of water.

Richard, Jr. continued by giving an historical account of the land surrounding that in dispute. He traced the ownership of the various tracts. The two separate parcels deeded in 1889 and 1893 eventually passed to Rex and Josephine Brooksher. It was Richard, Jr.'s testimony that neither Rex nor Josephine Brooksher ever did anything to lay claim to any portion of the disputed property. Indeed, the whole Whiteside family, through each generation, believed that they owned the disputed parcel. Richard, Jr. testified that when he was a teenager, his family pastured and raised cattle on the disputed parcel, which required them to build a fence and install a well. His family also hunted, fished and cut down trees on the disputed property. All the while these activities took place, he recalled no one ever laying claim to the property or evicting them from the property. Richard, Jr. recalled having to occasionally run persons off of the property, including one incident involving Defendant Joe Brooksher when he entered to cut down trees. He testified that the Elsberry Drainage District once requested permission to come onto the disputed property and clean the drainage ditch. He granted permission and eventually entered into an agreement with them, dated September 7, 1992, allowing the district access to the property to clear the drainage canal.

Plaintiffs also offered testimony of Richard F. Whiteside III, the great-grandson of Josiah Whiteside, who testified concerning growing up near the parcel and how he and his father, Richard, Jr., would go hunting and fishing on it. He, too, relayed how his father showed him the boundary lines of the property by pointing out the railroad irons at the northeast corner of the disputed parcel. He further testified that only his father and mother claimed ownership to the property and that no one else had ever laid claim to it or tried to run him off the property. This testimony was similar to that of other family members and family friends who relayed how they had entered the property with the Whitesides for various purposes, to hunt, fish and cut wood, and that no one had chased them off or claimed title to the disputed tract.

Sam Mayes, a former officer with the local drainage district, also testified for Plaintiffs. Mayes testified that the district contacted Richard, Jr. in order to arrange for the drainage ditch to be cleaned and that the district entered into an agreement with the Whitesides for the cleaning so as to avoid possible trespass charges. The district had contacted no one else for permission to clean the canal.

Joe Brooksher testified as a hostile witness for Plaintiffs. Brooksher explained that he

was raised on the property adjoining that in dispute. His parents, Rex and Josephine Brooksher, had purchased the land in 1942. Brooksher stated that he had sometimes entered the disputed tract without permission to cut wood or do other activities and that on one occasion Richard, Jr. had ran him off of the property. Brooksher testified that neither he nor other family members laid claim to the disputed parcel before 1992. In fact, Brooksher admitted that they thought the land belonged to Whitesides. It was not until 1992 when the drainage district came to clean the ditch and questioned the ownership of the land that Brooksher decided to seek title to the parcel.

Defendants offered the testimony of two witnesses. Both testified to the nature of the disputed land. One witness, John Scott, who was a lifelong resident of the area, stated that Rex and Josephine Brooksher never claimed title to the land and that it was not until recently that Joe Brooksher himself sought title to the parcel. Up to that point, it was the Whitesides that had claimed ownership of the property, according to Scott.

On March 18, 1993, Richard, Jr. and his wife, Evelyn, filed a two count petition, which was subsequently amended to add additional party plaintiffs. Count one asserted that Plaintiffs and their predecessors in title had continually for a period in excess of ninety years asserted ownership in the disputed parcel by adverse possession, claiming their ownership had been hostile, open and notorious. Count two sought a permanent injunction enjoining Joe Brooksher from entering and logging the property. Defendants counterclaimed claiming title to the same parcel by adverse possession. The action was tried without a jury. The court entered its judgment in favor of Plaintiffs on both counts. In its order the court decreed the land to Plaintiffs as follows:

> A parcel of land in U.S. Survey 1732, Lincoln County, Missouri, described as that part of Lot 10 that lies West of the East bank of Kings Lake in Township 50, Range 2 East, of the Fifth Principal Meridian, being 18.993 acres, as shown on a boundary survey dated June 3, 1994 by William J. Shea, Jr., Lincoln County Surveyor.

The order also enjoined Joe Brooksher from logging on the property. By implication, the disposition by the court in favor of Plaintiffs on their claim of ownership amounted to a rejection of Defendants' counterclaim. It is from the judgment in favor of Plaintiffs from which Defendants appeal.

 On review of court-tried matters, the judgment of the trial court will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or misapplies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The trial court did not enter findings of fact or conclusions of law. When no findings are made, we accept all evidence and inferences favorable to the judgment, and disregard all contrary inferences. *Pinnell v. Jacobs*, 873 S.W.2d 925, 927 (Mo.App.1994). We are to give deference to the trial court's opportunity to observe the witnesses, assess their credibility and weigh their sincerity. *Id.* The judgment must be affirmed if it is correct under any reasonable theory pleaded and supported by the evidence. *Mitchell v. Mitchell*, 888 S.W.2d 393, 396 (Mo.App.1994).

 Defendants assert five separate points of error, all of which are interrelated. Four of Defendants' specific claims of error, however, are not proper for our review. To begin with, three of the four points do not comply with our rules requiring a point relied on to state wherein and why the trial court's judgment is erroneous. *See* Rule 84.04(d); *Thummel v. King*, 570 S.W.2d 679, 685 (Mo. banc 1978). Points one and two are conclusionary statements. The rule expressly states that reciting only abstract statements of law without showing how they are related to the action or ruling are not in compliance with Rule 84.04(d). Point five does not comply in that it fails to cite any authority whatsoever in its argument section. Further, the points overlook what was before the court and ultimately decided by the trial judge. Count one was Plaintiffs' adverse possession claim while count two sought injunctive relief. Only count one is before us in this appeal. The issue for us to resolve is the propriety of quieting title to the subject

property in Plaintiffs based on their claim of adverse possession.

Upon a liberal reading of the briefs, we construe Defendants' appeal as challenging (1) the sufficiency of the evidence supporting a finding of ownership by adverse possession, and (2) the legal description of the subject property as adopted by the trial court in its order. To prevail on a claim of adverse possession, the proponent must prove the possession was (1) hostile, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous for a period of ten years. *Witt v. Miller*, 845 S.W.2d 665, 667 (Mo.App. 1993). Considering the aforementioned elements and the evidence presented in this case, we find there was substantial evidence to support the trial court's judgment quieting title through adverse possession in Plaintiffs' favor.

First, Plaintiffs presented sufficient evidence that their possession was hostile. To meet this element, the possession need merely be with the intent to possess, not necessarily the intent to take away from the true owner. *Witt v. Miller*, 845 S.W.2d at 668. The required hostility is not meant to imply animosity or ill will. *Id.* In the case herein, the Whitesides occupied the parcel with an intent to possess it as their own, which leads us to the next element, the nature of that possession.

Defendants argue that Plaintiffs' acts of possession were insufficient to support an adverse possession claim. Defendants assert that the nature of the land at issue, coupled with the minimal activities done on the land, like pasturing livestock, hunting, cutting firewood and fishing, do not satisfy the "actual possession" prong for adverse possession. Whether possession is "actual" depends on the nature and location of the property and possible uses for it. *Id.* Here, the land was wild and undeveloped and unfit for building or cultivation. The intent to take actual possession of land like that is less strict than if the land were suitable for development or cultivation. *Edmonds v. Thurman*, 808 S.W.2d 408, 410 (Mo.App. 1991). Less affirmative acts of ownership are required to constitute adverse possession when the land itself is rough and left in its natural state. *Id.*

Looking at the record, there was sufficient evidence of actual possession. Richard, Jr. testified that the land was pastured in the 1930s, requiring them to build a fence and a well. He recalled the days he and his father, and later his son, had fished, hunted and removed timber on the property. They took others onto the property, too, to hunt and fish and exercised some control over who had access to the parcel. The evidence was uncontested that those were the only activities that could be done on the property. The land was not fit for cultivation or building and was subject to flooding. Indeed, no one would have allowed the property to be used or disturbed in any other fashion.

Defendants cite to the case *Edmonds v. Thurman*, 808 S.W.2d 408, 410–11 (Mo.App.1991), in which the Western District held that a plaintiff's maintenance of an old fence on property that was wild and undeveloped was insufficient to establish actual possession of the disputed property. When analyzing an adverse possession claim, however, we must keep in mind that each piece of property is unique and, while the conditions in one case may be insufficient to constitute adverse possession, such conditions may be sufficient in another case. *Szombathy v. Shell Oil Co.*, 676 S.W.2d 15, 18 (Mo.App. 1984). Here, the actions on the part of Plaintiffs were sufficient under the circumstances. While it is true that pasturing cattle or cutting timber do not in themselves establish adverse possession, when there is evidence of other activities, the record may be sufficient to show actual possession depending on the individual circumstances. *Miller v. Warner*, 433 S.W.2d 259, 264 (Mo. 1968). Considering the nature of the parcel at issue, and the limited uses for which it was suitable, we find the evidence sufficient that possession of the land was actual. *See, e.g., Elliott v. West*, 665 S.W.2d 683, 690 (Mo.App. 1984) (holding claimants established actual possession of undeveloped land where they pastured cattle, repaired fence, harvested timber, hunted and fished).

■ The next item to consider is whether the possession was open and notorious. This element is satisfied when there is evidence of visible acts of ownership exercised over the disputed property. *Witt*, 845 S.W.2d at 668. Here, there was uncontradicted evidence that persons in the area considered the parcel as Whitesides' property. Even Defendant Joe Brooksher testified that he thought the land belonged to the Whitesides. The Whiteside family used the property as they saw fit and allowed others to do so. When they did not wish certain individuals to use the property, they exercised their control to kick them off. All activities were done in the daylight and with common knowledge of them. Moreover, when it came time to clear the drainage ditch located on the property, the Elsberry Drainage District requested permission from the Whitesides. No permission was sought from the Brookshers or any other persons in the area. The district and the Whitesides even entered an agreement authorizing the district complete access to the property as needed for the cleanup. We find the record supports a finding of open and notorious possession in this case.

■ The record further supports a finding of exclusive possession. Exclusive possession for purposes of adverse possession means that the persons possess the land for themselves, not for others. *Witt*, 845 S.W.2d at 667. In the case at bar, Plaintiffs presented evidence that they were the only persons exercising possession over the property. They hunted, fished and cut timber from the property and allowed others to do so at their permission. None of the Brookshers did anything to exercise possession over the property until Joe Brooksher decided to claim title in 1992. The Whitesides, on the other hand, for generations used the property as their own and controlled access to it to the extent feasible. In all of the testimony of the family, friends and persons in the area it was noted that Whitesides were the only ones who laid claim to the parcel.

■ The last element, continuous possession for ten years, was also clearly established by the record. Richard, Jr. and all the other witnesses for Plaintiffs, testified that the Whiteside family since early this century acted consistent with their claim of ownership. Their acts of possession, as discussed in more detail above, were for a period far exceeding the required ten year period.

■ Based on the foregoing analysis, we find the record sufficient to support a claim to ownership of the disputed property by adverse possession. We are unable, however, to affirm the judgment as entered. The original petition was filed by only Richard, Jr. and Evelyn Whiteside, as husband and wife. An amended petition was then filed to add eleven other persons as party plaintiffs. Those eleven persons, as they appear in the petition, are Helen Machir, Jackie Curtis Trail, James Richard Trail, Milroy Whiteside, Joanne Talbot, Sammy Whiteside, Diane Whiteside, Eddie Whiteside, Linda Whiteside, Bobby Whiteside, and Diane Whiteside.[3] The petition alleged that Plaintiffs are all residents of Lincoln County and are owners of the subject property. The only members of the Whiteside family to testify were Richard, Jr., his son, Richard Whiteside III, and his nephew, William Macher. The latter two were not parties to this action. The testimony at trial focused on the actions of Richard, Jr., and to a lesser extent his father and his son, and how each was shown the boundaries of the property and used the property to hunt, fish, etc. Of the thirteen plaintiffs, Plaintiffs Richard, Jr. and Evelyn Whiteside were the only actual possessors of the property here at issue. In order for more than one person to acquire title to the same property by adverse possession as cotenants, they must have exercised exclusive joint possession for the statutory period. *Elliott v. West*, 665 S.W.2d 683, 692 (Mo.App.1984). The record establishes that, other than being related by blood or marriage, eleven of the plaintiffs had no tenancy interest with Richard, Jr. and his wife. Nowhere in the record was there an allegation

3. The record is not clear whether there are actually two individuals named Diane Whiteside. Richard, Jr.'s testimony concerning the identity of these individuals and their relation was sketchy.

of cotenancy or other co-owner relationship among those eleven persons. We therefore find the evidence insufficient that the above-referenced plaintiffs, by virtue of the acts of Richard, Jr., could claim title to the parcel by adverse possession. That portion of the judgment quieting title to the disputed property in Helen Machir, Jackie Curtis Trail, James Richard Trail, Milroy Whiteside, Joanne Talbot, Sammy Whiteside, Diane Whiteside, Eddie Whiteside, Linda Whiteside, Bobby Whiteside, and Diane Whiteside is therefore reversed.

We also find it necessary to amend the judgment to specify the ownership interests of the remaining two parties, Richard, Jr. and Evelyn Whiteside. Pursuant to our authority under Rule 84.14, we order the judgment be modified to quiet title in Richard, Jr. and Evelyn Whiteside as tenants by the entirety.

One last issue remains. Defendants take issue with the legal description of the property as written in the survey and adopted by the trial court in its judgment. Defendants argue the description is inaccurate and not supported by the evidence. The legal description of the property was provided by William J. Shea, Jr., a licensed surveyor, who testified for the Plaintiffs. A proper foundation was laid for the admission of the survey by showing Shea's credentials and the specific documents Shea inspected to prepare the survey. Upon laying the proper foundation, the court may accept the surveyor's properly prepared survey and allow the surveyor to testify from his findings. *Weber v. Johannes*, 673 S.W.2d 454, 458 (Mo.App. 1984). The survey and accompanying testimony serves as competent evidence of the boundary lines of a parcel. *Id.* Our review of the record leads us to conclude the description of the parcel is supported by Shea's testimony which the court was entitled to rely upon in drafting its judgment.

Accordingly, the judgment of the trial court is affirmed in part as modified with respect to Richard, Jr. and Evelyn Whiteside and reversed in part as to the remaining named party plaintiffs.

REINHARD, P.J., and AHRENS, J., concur.

ATTACHMENT