Eva C. BRINNER a/k/a Eva Cheryl
Brinner, Appellant,

v.

Larry HUCKABA and Darlene
Y. Huckaba, Respondents.

No. 71573.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 16, 1997.

Edward K. Fehlig, Ziercher & Hocker, St. Louis, for appellant.

Daniel C. Nelson, Jeffery T. McPherson, St. Louis, for respondents.

AHRENS, Presiding Judge.

Plaintiff, Eva Brinner, appeals from the trial court's judgment in an action against adjoining landowners, Larry and Darlene Huckaba, to quiet title to property she claims by adverse possession. The parties dispute the boundary line between their properties. We affirm.

We view the evidence in the light most favorable to the trial court's finding. On May 13, 1994, Ms. Brinner purchased property on Venita Lane in Jefferson County, Missouri from Wayne Herman. The Brinner property consists of approximately 6 acres with a barn, equipment shed, second house, and residence.

On April 17, 1996, the Huckabas purchased from Donna Richard approximately 24 acres to the west of the Brinner property. The common boundary line is on the western edge of the Brinner property, which is the eastern edge of the Huckaba property.

The disputed tract is wedge-shaped, slightly less than one acre in size. The wedge is bounded on the East by the record property line, on the South by Venita Lane, on the West by a line of trees on the Huckaba property, and on the North by a fence running between the tree line and the recorded property line. A barbed wire fence runs near and parallel to the tree line. The driveway to the Brinner property runs through the wedge, but a recorded easement allows this use of the Huckaba land. Ms. Brinner claims she is entitled to the wedge by adverse possession and the true boundary between her property and the Huckabas' property is the fence line running parallel to the tree line. Ms. Brinner brought this action to quiet title to the wedge. Her petition also contained claims for trespass, ejectment, and an injunction.

The evidence adduced at trial supported a finding that Thomas and Sandra K. Lohman conveyed the Brinner property to Agatha "Kay" Mansker and Mona Cook on July 3, 1981. During their period of ownership, Thomas Mansker was added as a record owner. On March 24, 1989, the Manskers and Mona Cook conveyed the Brinner property to Wayne Herman and Belinda Propst. On May 3, 1994, Ms. Propst conveyed her interest in the Brinner property to Wayne Herman by a quitclaim deed.

During the time Kay Mansker lived on the property, the barbed wire fence, still standing today, ran along the west side of the wedge near the tree line on the Huckaba property. Kay Mansker and Mona Cook took fruit from several pre-existing orchard trees within the wedge. They pruned and maintained the orchard trees. They added two strands of barbed wire to the west fence and kept the brush back on the disputed area. For several years, they pastured a couple of horses in the wedge. They did not own horses or pick fruit every year they owned the Brinner property.

Kay Mansker considered herself an owner of the wedge. However, Kay Mansker testified that, at some point during the eight years she owned the property, a surveyor informed her she did not own all of the land up to the fence or tree line forming the western boundary of the wedge. After the survey, she continued to mow the wedge to maintain its appearance. Kay Mansker testified she did not intend to claim any part of the wedge as her own after finding out the recorded boundary line.

Wayne Herman testified he mowed the wedge and cut hay one year. Additionally, he burned some dead fruit trees in the wedge and pruned a couple others. Wayne Herman tore down the fence on the southern portion of the Brinner property as well as the southern portion of the wedge. Two or three years after he bought the Brinner property, Wayne Herman discovered the record boundary line from a surveyor. He continued to mow the wedge so that the adjacent Brinner property would look better. Belinda Propst also knew of the record boundary line. Like Wayne Herman, she continued to mow the wedge for aesthetic reasons.

When he sold the property to Ms. Brinner, Wayne Herman showed her where the record boundary line stood. He further informed her that Donna Richard owned the property on the other side of the line and that Ms. Brinner need not worry about using the wedge because nobody cared.

After acquiring her property, Ms. Brinner mowed, fertilized, and planted grass seed on the wedge. Moreover, she trimmed the orchard trees. Prior to April 1996, no one indicated they were claiming an interest in the wedge of land.

Before purchasing the adjoining land from Donna Richard, the Huckabas had it surveyed on April 11, 1996. Ms. Brinner confronted the Huckabas, informing them that the wedge had been used and maintained up to the fence line as a part of the Brinner property. The Huckabas offered to sell Ms. Brinner some land, including the wedge. Ms. Brinner refused, believing the offering price to be unrealistically high. The Huckabas closed on the property on April 17, 1996.

The Huckabas and Ms. Brinner never entered into a written purchase agreement or sales contract. After buying the property, Mr. Huckaba staked out a building site on the wedge.

The trial court found Ms. Brinner failed to carry her burden of proving she owned the wedge by adverse possession. In the alternative, the trial court found the doctrines of estoppel and unclean hands barred Ms. Brinner from recovery. The trial court found Ms. Brinner's testimony not to be credible and therefore resolved all conflicts in favor of the Huckabas.

On appeal, Ms. Brinner contends the trial court erroneously applied the law of adverse possession or ignored undisputed evidence in finding Ms. Brinner did not carry her burden of supporting such a claim. Secondly, Ms. Brinner argues the trial court erroneously applied the law by injecting "scienter" as an element of adverse possession and improperly ruled that Ms. Brinner had to establish an intent to own the wedge for a period of ten years. Finally, Ms. Brinner contends the trial court erred in applying the doctrines of unclean hands and estoppel to bar her claim to title in that unclean hands is a defense in equity and the Huckabas had no right to rely on a belief that Ms. Brinner would buy the wedge from them if they purchased the property.

### STANDARD OF REVIEW

 This court begins with the presumption that the trial court's judgment is correct. *Weaver v. Helm*, 941 S.W.2d 801, 806 (Mo. App.1997). It is the appellant's burden to show otherwise. *Id.*

 The judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). All evidence favorable to the judgment and all inferences to be drawn from the evidence are accepted as

true, and all contradictory evidence is disregarded. *Strubberg v. Roethemeyer*, 941 S.W.2d 557, 560 (Mo.App.1997). We defer to the trial judge's superior opportunity to assess the credibility of the witnesses. *Harris v. Lynch*, 940 S.W.2d 42, 45 (Mo.App.1997).

### POINTS ON APPEAL

 To establish adverse possession, a plaintiff must convince the fact finder of each and every element of the claim. *Harris*, 940 S.W.2d at 45. This means the plaintiff must prove his or her possession of the defendant's land was 1) hostile and under a claim of right, 2) actual, 3) open and notorious, 4) exclusive, and 5) continuous for a period of ten years. *Id.* Failure to prove any one of the elements defeats the plaintiff claim. *Id.* The plaintiff has the burden of proving each element by a preponderance of the evidence. *Teson v. Vasquez*, 561 S.W.2d 119, 127 (Mo. App.1977).

 The trial court held Ms. Brinner failed to carry her burden of establishing a claim for adverse possession. Specifically, the court found that Ms. Brinner failed to show the "hostile, i.e., under a claim of right" element by a preponderance of the evidence. To be hostile and under a claim of right, mere possession of a piece of property is not enough. *Teson*, 561 S.W.2d at 127. Possession must be opposed and antagonistic to the claims of all others. *Id.* The claimant must occupy the land with the intent to possess it as his or her own. *Id.* Whether possession is hostile and under a claim of right is a question of intent. *Vecchiotti v. Tegethoff*, 745 S.W.2d 741, 743 (Mo.App.1987).

 Ms. Brinner persuasively argues those possessing the Brinner property performed more than minimal acts of maintenance on the disputed wedge. In fact, those possessing the Brinner property performed the following acts on the disputed wedge: they mowed the grass, seeded and fertilized the soil, maintained a fence [1] on the western

1. Ms. Brinner contends that acquiescence in a fence as a boundary line warrants a presumption that it is the true line. Ms. Brinner presented no evidence that any owner of the Huckaba property ever agreed to a boundary other than the

record property line. The mere location of a fence in the absence of an agreement that it establishes a boundary line, does not relinquish any part of the record owner's land. *Harris*, 940

part of the wedge, cleared the wedge of dead trees and brush, pastured horses on the wedge, pruned orchard trees on the wedge, and harvested fruit and a hay crop on the land up to the fence line.

 This Court has recognized that maintaining land by clearing it, using it as a garden and erecting a fence are acts of hostile possession. *Witt v. Miller*, 845 S.W.2d 665, 668 (Mo.App.1993). These acts each demonstrate physical possession of the area. A combination of these acts of occupancy serves as evidence of actual possession. *Harris*, 940 S.W.2d at 45–46. However, a trial court is not limited to a consideration of the parties' objective manifestations. "While it is true that the intent to possess can be inferred from acts of dominion over the land, we are unaware of any authority which requires a court to focus only on objective acts and to exclude all subjective evidence." *Vecchiotti*, 745 S.W.2d at 743.

 As Ms. Brinner correctly notes, where possession of the entire enclosure is transferred, even though the deed by which the premises are conveyed does not describe the entire tract, the continuity of possession will not be broken and the grantees may stand as adverse possessors. *Jurgensmeyer v. Yoest*, 647 S.W.2d 808, 810 (Mo.App.1982). The period need not be the ten years just prior to the filing of the lawsuit. Once the period has run, the possessor is vested with title and the record owner is divested. Ms. Brinner did not carry her burden of establishing continuity of hostile possession for the requisite ten year period.

Ms. Brinner argues Kay Mansker's eight years of possession should be tacked onto Wayne Herman's five years of possession, vesting title to the disputed wedge in Wayne Herman before he sold the property. This argument is inconsistent with the direct testimony of the witnesses.

Kay Mansker testified at some time during her tenure as the owner of the Brinner property, a surveyor informed her that the fence line did not reflect the true boundary line. Although she originally believed she owned the disputed wedge, Kay Mansker further testified on cross-examination that after discovering the true boundary line she continued to mow up to the fence to keep the grass looking nice, but had no intent to take the property or own it. Similarly, Wayne Herman testified that he discovered the true boundary line from a surveyor approximately two or three years after he had purchased the property. Wayne Herman testified he mowed the grass, brush-hogged, and burned some dead trees on the disputed wedge for aesthetic reasons. He testified that had he known he did not own the property, he would have probably asked permission. When Ms. Brinner bought the property, Wayne Herman showed her the true boundary line and explained it did not matter if she used the property up to the fence line because nobody cared and everybody used it. Belinda Propst also testified she continued to mow the yard after discovering the true boundary line to keep the area looking nice.

 In order to establish the occupation of another's land is hostile, the claimant in an adverse possession case must show "the intent to possess the land as his own." *Witt v. Miller*, 845 S.W.2d 665, 668 (Mo.App.1993); *See also Weaver v. Helm*, 941 S.W.2d 801, 804 (Mo.App.1997) ("Hostile means a possession antagonistic to claims of all others, with an intent to occupy as one's own.") and *Heigert v. Londell Manor, Inc.*, 834 S.W.2d 858, 863 (Mo.App.1992) ("Adverse possession requires a showing that an occupier or user of land intended to possess the land as his or her own."). In determining whether the elements of adverse possession have been proven, "consideration is given to . . . the intent of the parties and those under whom they claim . . ." *Counts v. Moody*, 571 S.W.2d 134, 138 (Mo.App.1978). The claimant must not occupy the land in subservience to a recognized, superior claim of another. *Teson*, 561 S.W.2d at 127. The intent to possess, occupy, control, use and exercise dominion over the disputed property satisfies the "hostility" element of adverse possession. *Counts*, 571 S.W.2d at 139.

The trial court did not err in finding that the previous owners, under whom Ms. Brin-

S.W.2d at 46; *Aley v. Hacienda Farms, Inc.*, 584 S.W.2d 126, 128 (Mo.App.1979).

ner claimed adverse possession, did not intend to possess the disputed wedge as their own for a continuous period of ten years. The instant case is analogous to the facts in *Norman v. Allison*, 775 S.W.2d 568.(Mo.App. 1989). The court similarly found insufficient evidence of the requisite hostile intent when the adverse possessor testified as to lack of intent to possess the disputed property despite placing a fence around that property. *Id.* at 571. When testimony regarding subjective intent to possess is contrary to the objective evidence of acts of possession, the trial judge may find the objective manifestations insufficient evidence to carry the requisite burden. Acts which may have sufficed to establish actual and hostile possession will not be enough if it is clear there exists no subjective intent to possess. Ms. Brinner and her predecessors may have intended to use the wedge, but there is substantial evidence in the record to support the trial court's finding that they did not intend to exercise dominion or possess the land as their own for a continuous ten year period.

Ms. Brinner argues in her second point that the trial court applied the wrong law by requiring "scienter." We find the trial court did not require scienter, but merely an intent to possess the disputed property as an owner. Ms. Brinner cites *Whiteside v. Rottger*, 913 S.W.2d 114, 120 (Mo.App.1995), which holds the possession "need merely be with the intent to possess, not necessarily the intent to take away from the true owner." Ms. Brinner misinterprets the language in the *Whiteside* opinion. This language addresses a situation in which the plaintiffs believe the property is their own and intend to possess it as such. In *Whiteside*, the Whiteside family believed they owned the disputed parcel for many years. *Id.* at 118. The Whiteside family did not intend to take the land away from the true owner, but they did intend to possess the land as their own.

The trial court did not misapply the law in finding Ms. Brinner failed to carry her burden because several witnesses testified that after discovering the true boundary they had no intent to assume ownership of the land beyond the record boundary line. Based on the statements made on cross-examination, the trial court could have found the previous owners did not form the requisite subjective intent to possess the property as their own. *Heigert*, 834 S.W.2d at 863. Ms. Brinner failed to show her predecessors held the land with the requisite hostility for the purpose of tacking ownership. "Naked possession asserted for any period of time, no matter how lengthy, is insufficient to ripen into adverse possession." *Teson*, 561 S.W.2d at 127.

We find no need to address the other elements of adverse possession or Ms. Brinner's third point on appeal, dealing with the inappropriate use of estoppel and unclean hands as defenses in this action. The judgment is affirmed.

CRANDALL and KAROHL, JJ., concur.