

# In the Missouri Court of Appeals
# Eastern District

## SOUTHERN DIVISION

| | |
|---|---|
| STEPHENS CEMETERY, Est. 1864, Inc., et al., ) | No. ED106418 |
| ) | |
| Respondents, ) | Appeal from the Circuit Court |
| ) | of Madison County |
| vs. ) | |
| ) | Honorable Sandra Martinez |
| WILMA ELIZABETH TYLER, ) | |
| ) | |
| Appellant. ) | FILED: July 23, 2019 |

Wilma Elizabeth Tyler ("Appellant") appeals from the judgment of the Circuit Court of Madison County, in favor of Stephens Cemetery, Est. 1864, Inc., William Maurice Stephens ("Maurice"), Ernest Jerry Stephens, Steven Eugene Stephens, Jana Marie Cook, and Marcia Diane Braswell (collectively, "Respondents"). The circuit court quieted title of the cemetery in dispute to roughly two acres of land for Respondents, and also found title to Stephens Cemetery ("the Cemetery") was vested in the public. We reverse and remand.

## I. Background[1]

This case involves a family feud over the title to two to three acres of land. Both sides agree that a cemetery covering about one acre has been established, the dispute concerns an

---

[1] Prior to oral argument in this case, Appellant filed a Motion to Strike Respondents' brief for failure to comply with Rule 84.04(f). This motion was taken with the case. Rule 84.04(f) provides, "[i]f the respondent is dissatisfied with the accuracy or completeness of the . . . statement of facts in the appellant's brief, the respondent's brief may include a . . . statement of facts." Rule 84.04(f). Here, Respondents do not include a statement of facts, yet their brief contains many additional facts not mentioned in Appellant's brief under the heading "Additional Argument." Substantial compliance with Rule 84.04 is mandatory, but this Court has the discretion to review an appeal "on the merits, even when the brief is not entirely compliant with the rule". M.D.L. V. S.C.E., 391 S.W.3d 528, 525 n.2 (Mo. App. E.D. 2013). In light of this discretion, Appellant's motion to strike is denied.

additional parcel of land claimed to be an expansion of the Cemetery.  The history of this cemetery goes back to 1857 when Gabriel Jones Stephens, an American pioneer, acquired the land underlying and surrounding the cemetery from the U.S. Government.  The first person buried in what would become the Cemetery was a 9-year-old boy, buried in 1864.

The mistakes made involving this cemetery – and there are many – date back to 1910, when the family patriarch attempted to create the "Stephens Grave Yard" without the benefit of an adequate survey or legal advice.  On October 11, 1910, Thomas L. Stephens and Mary E. Stephens made their marks to convey a tract of land beginning at a stated corner ("the 1910 deed"), comprising a square of real estate 13 rods to a side.  The 1910 deed recites, "this land is deeded to the Public for a Public Burying Ground and to be used as such, and is known as the Stephens Grave Yard"; the term "Stephens Grave Yard" is used in no other documents.  The grantees were T.M. Matthews, H.M. Stephens, and E.D. Cook., as "Trustees for the public." There is no Trust document detailing the duties of the Trustees or outlining how they are to be replaced or their successors selected.  Unfortunately, the legal description in this deed showed the property in the wrong place.

The next deed in the chain of title came on May 29, 1947 ("the May 1947 deed").  There, Margaret Rossell, Fred Brittan, and Mamie Brittan conveyed "3 acres, more or less" to C.C. Stephens ("Claude Stephens") and his wife Ruby Stephens for $1.  Maurice, Claude and Ruby's son, testified at trial that this three-acre tract was deeded to "expand the cemetery," because Claude Stephens was "running out of room."  However, this deed makes no mention of the cemetery, or that the three acres conveyed were for cemetery purposes.  It appears that the property described in this deed is at the heart of the current dispute.

The Brittans and Ms. Rossell again conveyed land to Claude Stephens and his wife Ruby on April 8, 1948 ("the April 1948 deed").  This deed recites the location of the land to be

2

conveyed, "excepting that part which has heretofore been conveyed to Claude Stephens, and further excepting that part which has heretofore been conveyed to the Trustees of the Stephens cemetery, on or about [December 20, 1947]." However, there is no record of any deed from December 1947 conveying any land to Claude Stephens.

On December 12, 1950, the same parties again conveyed property to Claude Stephens for $1 ("the 1950 deed"). This deed excepted "approximately 10 acres more or less heretofore conveyed by Warranty deed to [Claude Stephens] and Ruby E. Stephens and to the Trustees of the Stephens Cemetery." However, there is no record of any conveyance of approximately 10 acres by warranty deed. Further, there is no information as to who were then the trustees of the Cemetery, and no evidence that any party made a search for the trustees of the cemetery.

In 1989, Claude Stephens was in ill-health. On July 28, 1989, shortly before his death, Claude conveyed his 400-plus-acre farm to Anna Marie Combs ("Ms. Combs")[2] as Trustee of the "Claude C. Stephens Trust." The trust, however, was not dated until July 31, three days later. This deed does not mention the cemetery. The trust provided that, after the death of Ruby Stephens, the 400 acres would be divided into eight plots, and that the eight children would draw lots to determine which parcel each received. In April 1998, Craig Ruble was engaged to survey the 400-plus acres placed in the trust ("Ruble survey"), and all of the deeds for the eight parcels referenced the Ruble survey.

Subsequent transfers were recorded, and on February 20, 2002, Ms. Combs conveyed "40.7 acres, more or less," and "excepting therefrom approximately 1.0 acre in the northeast quarter of the northeast quarter . . . used for cemetery purposes and known as the Stephens Family Cemetery"[3] to Cora Lee Stephens (Cora Lee). Then, on November 5, 2009, Cora Lee

---

[2] Ms. Combs is the daughter of Claude and Ruby Stephens.
[3] We assume that the Stephens Grave Yard, Stevens Cemetery and Stephens Family Cemetery may be used interchangeably.

conveyed that same land to Appellant ("the November 2009 deed"), again "excepting therefrom approximately 1.0 acre . . . used for cemetery purposes and known as the Stephens Family Cemetery." It was shortly after this conveyance that many of the issues surrounding the disputed two-plus acres began.[4]

Since Claude's death in 1989, Maurice took over his father's duties with regards to the cemetery. Maurice took over the cemetery bank account, he was the contact for family members and the public concerning burials and grave site locations, he organized the maintenance, repairs, and improvements of the cemetery, and he organized the annual "cleanup day" for the cemetery. Further, on September 8, 2014, Respondents created "Stephens Cemetery Est. 1864," a non-profit corporation ("the Corporation") in charge of operating the cemetery. Along with individual Respondents, the Corporation is also a party to this suit.

Because Appellant does not reside in Missouri, Cora Lee was caretaker of the land she conveyed to Appellant in the November 2009 deed. In 2012, Cora Lee hired a surveyor to survey the cemetery boundaries, and after that survey, she erected a fence post with a "No Trespassing" sign at the foot of one of the graves within the disputed two acres. Cora Lee, and Appellant's other agent, Ken Buchheit ("Buchheit"), also hung purple ribbons along County Road 305 inside the two acres under dispute.

On April 10, 2015, Respondents brought suit against Appellant in the Circuit Court of Madison County, asking the court to "determine that the boundary lines of Stephens Cemetery are as described in Paragraph #45 of the Petition . . . that Plaintiff Stephens Cemetery, Inc.[5] is the fee simple owner of the above-described 3.11 acres and to quiet title in said 3.11 acres in its name." The trial court ruled in favor of Respondents, finding "[the Cemetery] . . . is a public

---

[4] Appellant does not claim ownership of the approximately one acre tract being used as a cemetery.
[5] Respondents' counsel referred to the Corporation as Stephens Cemetery Inc., when it is in fact Stephens Cemetery Est. 1864.

4

cemetery and that title thereto is vested in the public, with all the rights and interest thereto the public has in a public cemetery," and further "that Plaintiff Stephens Cemetery, Est. 1864, its officers and assigns, is charged with maintaining and operating the Stephens Cemetery for the benefit of the public."

Appellant subsequently filed this appeal.

## II. Discussion

Appellant raises six points on appeal. First, Appellant alleges the trial court lacked jurisdiction and this Court should dismiss Respondents' petition for the reason that Respondents' petition fails to state a claim upon which relief can be granted. Appellant reasons that the individual Respondents have no standing because they claim no interest in the real estate or the cemetery, but claim all of the interest in the real estate in the Corporation.

Second, Appellant argues the trial court erred in sustaining Respondents' Motion to Amend the Pleadings to Conform to the Evidence ("Motion to Amend") because the evidence that the Cemetery was conveyed to trustees was not tried by implied consent, but was an integral part of Appellant's defense to Respondents' claim of adverse possession.

Third, Appellant claims the trial court erred in ordering in its judgment that the one-acre tract conveyed by the 1910 deed to trustees has title vested in the public because no defendant was named to represent the trustees or to represent the interest in the real estate of the original one-acre Stephens Cemetery. Further, in her Fourth point Appellant asserts that Respondents have no standing and are not the real party in interest for the reason that title to the Cemetery was granted to trustees who have neither been located, served, nor made parties to the litigation.

In her Fifth point on appeal, Appellant argues the trial court erred by vesting Appellant's 2.11 acres of land in the public because there is "no legal theory by which the public can obtain title to Appellant's property," and because the record is devoid of any facts that would support

5

the trial court vesting title of Appellant's property in the public. Similarly, in her Sixth point, Appellant argues the trial court erred in quieting title based on adverse possession because the elements of adverse possession were not established.

A. Standard of Review

Appellate review in suits of equitable nature is such that "the decree or judgment of the trial court will be sustained . . . unless there is no substantial evidence to support it . . . it is against the weight of the evidence . . . it erroneously declares the law, or unless it erroneously applies the law." Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). Further, appellate courts should exercise our power to set aside a judgment on the ground it is against the weight of the evidence "with caution," and with "the firm belief that the . . . judgment is wrong." Id.

B. Analysis

Point 1: Respondents' Petition Failed to State a Claim Upon Which Relief Could be Granted

Appellant's first point on appeal alleges Respondents' petition ("the Petition") failed to state a claim upon which relief could be granted. Appellant reasons that because the individual Respondents claimed no interest in the land in dispute, and the Corporation could not claim any interest by adverse possession, the parties lacked standing and the trial court lacked jurisdiction to grant relief. We agree.

Missouri Rule 55.27 states, "[a] defense of failure to state a claim upon which relief can be granted . . . may be made in any pleading permitted or under Rule 55.01, or by motion for judgment on the pleadings." Mo. Sup. Ct. R. 55.27(g)(2). Appellant asserts that the defense of failure to state a claim upon which relief can be granted is "never waived," and it can be raised "any time, including on appeal." While this was once the case, that changed in 2012 when Rule 55.27 was amended to delete the phrase "or at the trial on the merits, or on appeal." Stander v. Szabados, 407 S.W.3d 73, 81 (Mo. App. W.D. 2013). This amendment indicates the defense

6

may no longer be raised for the first time on appeal, and must now be raised in any pleading permitted by Rule 55.01, or by a motion for judgment on the pleadings. Id. However, because Appellant raised this issue in her Motion for Judgment on the Pleadings, her argument is not waived.

In paragraph 10 of the Petition, individual Respondents claim that they, "as descendants of Gabriel Jones Stephens, are representative parties that can and will fairly and adequately represent and protect the interests of the Plaintiff Stephens Cemetery Inc., and themselves and other unnamed descendants of Gabriel Jones Stephens." The Petition gives a description of the boundaries of the Cemetery in paragraph 45, and the "prayer for relief" in Count I of the Petition asks the court to "hear this cause and determine that the boundaries of the Stephens Cemetery are as described in paragraph 45 above by operation of law, that Plaintiff Stephens Cemetery Inc. is fee simple owner of the above-described 3.11 acres, and quiet title in said 3.11 acres in its name." At no point do the individual Respondents claim any ownership or interest in the disputed property. Respondents simply request the trial court find the Corporation is the fee simple owner of the full 3.11 acres. However, that is not legally possible.

Because individual Respondents do not claim any interest in the disputed property, Appellant argues they have no standing to sue. We will discuss individual Respondents' lack of standing in greater detail in our analysis of Appellant's fourth point. Suffice it to say this argument is well founded. Where a party lacks standing, the trial court has no jurisdiction to grant the requested relief. Bellistri v. Ocwen Loan Servicing, LLC, 284 S.W.3d. 619, 622 (Mo. App. E.D. 2009) (quoting Eastern Mo. Laborers Dist. Council v. St. Louis Cty., 781 S.W.2d 43, 46 (Mo. banc 1989)). Here, because the individual Respondents lack standing, the trial court was without jurisdiction to grant relief. Id.

Additionally, in the Petition, Respondents plead some of the elements for adverse possession in an attempt to show it is possible for the trial court to find the Corporation adversely possessed the disputed property, and is thus the fee simple owner. We will discuss the failures of Respondents' adverse possession argument in greater detail in our analysis of Appellant's sixth point. Here, we find the Corporation could not have adversely possessed the disputed property because it was only in existence for a few months at the time this case was filed. The Corporation was created in September 2014, and thus could not have adversely possessed the disputed property for the requisite ten-year period. See Watson v. Mense, 298 S.W.3d 521, 526 (Mo. banc 2009) ("To acquire title by adverse possession . . . possession must be . . . continuous for the necessary period of years prior to the commencement of the action."); see also Ben Brower Prop. Co., LLC v. Evella, LLC, 554 S.W.3d 504, 508 (Mo. App. S.D. 2018) (noting the party seeking to establish adverse possession must prove the possession was continuous for ten years). This suit was filed in 2015, less than a year after the creation of the Corporation. Further, Respondents do not argue at any point in the Petition that they are allowed to tack onto any predecessor in title to reach the requisite ten-year period. Thus, adverse possession will not lie.

Therefore, because the individual Respondents lacked standing and the Corporation could not have adversely possessed the disputed property, the trial court lacked jurisdiction and there was no claim upon which relief could be granted. Appellant's first point is granted.

Point 2: Trial Court Erred in Granting Respondents' Motion to Amend

Appellant's second point alleges the trial court erred in sustaining Respondents' Motion to Amend because the evidence that the Cemetery was conveyed to trustees was not tried by implied consent, but was an integral part of Appellant's defense to Respondents' claim of adverse possession. We agree.

8

Missouri Rule 55.33 governs when an issue is tried by implied consent. The rule states, "When issues not raised by the pleadings are tried by . . . implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Rule 55.33(b). Further, Missouri courts have found implied consent "cannot be found where the evidence presented was relevant and admissible to other issues in the case," and that this rule applies "only where the evidence presented bears solely on the unpleaded issue and not upon issues already in the case. . . ." State ex rel. Mohart v. Romano, 924 S.W.2d 537, 540 (Mo. App. W.D. 1996).

At trial, Steve Stephens testified that members of the public were allowed to be buried in the Cemetery. Also at trial, Appellant admitted the original one-acre cemetery conveyed by the 1910 deed was a public cemetery. Respondents seized on these two instances to draft their Motion to Amend. That motion asked the court's permission to amend the pleadings to request "as an alternative prayer for relief in Count II that this court find the entire 3.11 acres, including 2 plus acres in controversy, is a public cemetery and that neither [Respondents] nor [Appellant] have any right or claim to it. . . ." The trial court granted this motion. This decision was against the weight of the evidence, and in doing so the trial court misapplied the law.

To begin with, the issue of trustees having title to the cemetery was raised in the Petition, as Respondents referenced both the 1948 and 1950 deeds. The 1948 deed excepted "that part which has heretofore been conveyed to the Trustees of [the Cemetery]," and the 1950 deed excepted "approximately 10 acres more or less heretofore conveyed by Warranty deed to . . . the Trustees of [the Cemetery]." Further, Appellant repeatedly argued at trial that the trustees referenced in multiple deeds were the real party in interest, particularly in response to Respondents' adverse possession argument. Appellant also questioned Respondents' expert about whether he had made any attempt to locate these trustees. Thus, the evidence presented did not "bear solely on the unpleaded issue." Romano, 924 S.W.2d at 540.

9

Therefore, the trial court's decision to grant Respondents' Motion to Amend was against the weight of the evidence, and in doing so, the court misapplied the law, which clearly states Motions to Amend should not be granted where the evidence presented does not "bear solely on the unpleaded issue." Murphy, 536 S.W.2d at 32; Romano, 924 S.W.2d at 540. Appellant's second point is granted.

Point 3: Trial Court Erred in Finding Original One-Acre Cemetery has Title Vested in Public

Appellant's third point alleges the trial court erred in ordering that the one-acre tract conveyed by the 1910 deed has title vested in the public. Appellant reasons that because no defendant was named to represent the trustees, or to represent the interest in the real estate, the trial court could not vest title to this area in the public. We agree.

Missouri's Revised Statutes, Section 214.140 governs how to place property in trust for the benefit of cemeteries. It provides:

> It shall be lawful for any grantor . . . **to give** . . . **or place in trust any real or personal property**, or the income therefrom, **for the use and benefit of any public or private cemetery** in this state . . . and any person, association or corporation duly authorized and capable of qualifying as trustee is hereby authorized . . . to receive and hold any such real or personal property, or the income therefrom, and expend the same for any or all such uses and purposes, under the terms and conditions of any such . . grant, devise, bequest or trust.

Section 214.140, RSMo. Further, Section 214.200 explains how title is obtained to lands used for burial purposes, and it provides, "When lands shall have been continuously used as a public or private burial ground for a period of ten years or more and **such land has not been deeded to the public** for the purpose of a burial ground, title may be obtained to such lands in the way and manner provided for the enlargement of burial grounds in section 214.080.[6]" Additionally, quiet title actions in Missouri are governed by Section 527.150, which provides:

> Any person claiming any title, estate or interest in real property . . . may institute an action against any person or persons having or claiming to have any title, estate or

---

[6] We will discuss Section 214.080 at length in our analysis of Appellant's fifth point.

10

interest in such property, whether in possession or not, to ascertain and determine the . . . title and interest of said parties, respectively, in such real estate, and to define and adjudge by its judgment or decree the title . . . and interest of the parties severally in and to such real property.

Section 527.150.1.

With the 1910 deed, Thomas L. Stephens and Mary E. Stephens conveyed land to T.M. Matthews, H.M. Stephens, and E.D. Cook as "Trustees for the Public." The 1910 deed provided "this land is **deeded to the public** for a Public Burying Ground and to be used as such, and is known as the Stephens Grave Yard." Such is permitted by Section 214.140.[7] See Section 214.140, supra. Further, subsequent transfers in the April 1948 deed and the 1950 deed also reference the "Trustees of the Stephens Cemetery." However, the April 1948 deed and the 1950 deed do not explain who these "Trustees" are.[8] Further, there is no evidence Respondents ever attempted to locate these trustees or any successor trustees.

In its judgment, the trial court found that this original one-acre cemetery, "is a public cemetery," and title to this land is "vested in the public." Such a ruling was against the weight of the evidence, and a misapplication of the law, because there is no proper defendant named to represent the interest of the trustees. Appellant was the sole defendant named in this case, and she does not claim any interest in the original one-acre cemetery. In fact, the original one-acre cemetery was excepted from the November 2009 deed conveying approximately 40 acres to Appellant. The November 2009 deed specifically said, "excepting therefrom approximately 1.0

---

[7] Section 214.200 also contemplates a grantor deeding land to the public, stating it applies when "such land has not been deeded to the public . . . ." Section 214.200.

[8] There are many other issues with these deeds as well. For instance, the April 1948 deed excepts the conveyance in the May 1947 deed, but further excepts "that part which has heretofore been conveyed to the Trustees of the Stephens Cemetery, on or about [December 20, 1947.]" However, as we mentioned in the discussion of the facts of this case, there is no evidence that the deed of December 20, 1947, was ever recorded, or that the three acres supposedly conveyed were ever conveyed to anyone, much less to the Trustees of the Cemetery. Further, the 1950 deed references a conveyance of "10 acres more or less heretofore conveyed by Warranty deed to [Claude and Ruby Stephens] and to the Trustees of Stephens Cemetery." There is also no record of this conveyance. Another question raised by the April 1948 deed is whether the "Stephens Cemetery" as it is referred to in that deed as well as the 1950 deed, is a different entity than the "Stephens Grave Yard," as the original one-acre cemetery is referred to in the 1910 deed. The record is devoid of any answer to this question.

11

acre . . . used for cemetery purposes and known as the Stephens Family Cemetery." Appellant does not claim any interest in that original one acre, and she could not, even if she wanted to do so. Section 527.150 states any person claiming any title or interest in real property can bring a quiet title action against anyone "*claiming to have any title . . . or interest in such property.*" Section 527.150.1 (emphasis added). Appellant does not claim any such title or interest in the original one-acre cemetery.

Therefore, the trial court misapplied the law in vesting title to the original one-acre cemetery in the public, because Appellant claims no interest in that property, could not claim any such interest, and there was no party named to represent the trustees or to represent the interest in the original one-acre cemetery. Appellant's third point is granted.

<u>Point 4: Respondents Are Not the Real Party in Interest and Have No Standing</u>

Appellant's fourth point on appeal asserts Respondents have no standing, and are not the real party in interest in this case. Appellant reasons that because title to the Cemetery was granted to trustees who have not been located, served, nor made parties to the litigation, Respondents are not the real party in interest, and thus cannot bring this suit. We agree.

Rule 52.01 requires that "every civil action shall be prosecuted in the name of the real party in interest." The "real party in interest" is the party having a "justiciable interest susceptible of protection through litigation." <u>Daniele v. Mo. Dept. of Conservation</u>, 282 S.W.3d 876, 880 (Mo. App. E.D. 2009). To have standing, a party must have a "legally cognizable interest in the subject matter and that he has a threatened or actual injury." <u>Bellistri</u>, 282 S.W.3d at 622. If a party lacks standing, the trial court has no jurisdiction to grant the requested relief. <u>Id.</u>

Here, Respondents are not the real party in interest. The trustees are, and they have not been served or made parties to this litigation. See *Cf.* <u>Kane v. Mercantile Trust Co. Nat. Ass'n,</u>

12

513 S.W.2d 362, 364 (Mo. 1974) (Missouri Supreme Court held the trustee of a charitable trust created in a will must be served in a will contest). As discussed above, the 1910 deed conveyed the original one-acre cemetery to T.M. Matthews, H.M. Stephens, and E.D. Cook as "Trustees for the Public." Both the April 1948 deed and the 1950 deed mention the "Trustees of Stephens Cemetery." Despite this, the trial court found, "No successor trustees were named after the three trustees named in the 1910 deed had died, and none were in existence or named . . . thereafter. . . ." The record contains no evidence to support this finding. Respondents admitted they never even attempted to locate any trustees. Further, the fact that both the April 1948 deed and the 1950 deed still mention trustees is further evidence disproving this finding. Even if the trustees were deceased or no longer serving, it was the trial court's duty to appoint trustees. Carlock v. Ladies Cemetery Ass'n, 317 S.W.2d 432, 440 (Mo. 1958) (finding that where there is a failure to appoint a trustee, or the trustee has been "erroneously or uncertainly designated," the trial court will "appoint a trustee for a charitable use, otherwise valid.")

The trustees are the parties with a "justiciable interest" capable of being protected through the litigation, because they were named in the deeds conveying this property. At no point do Respondents claim any interest in this disputed property. As we mentioned in our analysis of Appellant's first point, in the Petition, Respondents simply claim "as descendants of Gabriel Jones Stephens, are representative parties that can and will fairly and adequately represent and protect the interests of the Plaintiff Stephens Cemetery Inc." Because Respondents do not claim any interest in the property, they cannot present any "legally cognizable interest" in the property, or claim there is any "threatened or actual injury" to any interest. See Bellistri, 284 S.W.3d at 622. And where a party does not claim any such interest the party lacks standing and the trial court is without jurisdiction to grant any relief. Id.

13

Thus, the trial court erred in finding there were no successor trustees and in granting any relief to Respondents. Appellant's fourth point is granted.

<u>Point 5: Trial Court Erred in Vesting Title to Disputed 2.11 Acres in the Public</u>

Appellant's fifth point asserts that the trial court erred in vesting title to Appellant's disputed 2.11 acres in the public. Appellant reasons there is no legal theory by which the public could obtain title to Appellant's land, and the record is devoid of any facts supporting the trial court vesting title in the public. We agree.

In its judgment, the trial court found that "the expanded Stephens Cemetery . . . totally 3.11 acres . . . is a public cemetery," and that "title . . . is vested in the public." It appears the trial court reached this conclusion by finding "by the 1947, 1948, and 1950 deeds Claude Stephens . . . intended to and did expand the one acre public cemetery established by the 1910 deed." As mentioned in our discussion of the facts of this case, Maurice testified at trial that the roughly three acres conveyed by the May 1947 deed was conveyed in order to expand the cemetery because it was "running out of room." But nothing in the May 1947 deed, nor the April 1948 or the 1950 deeds, mentions anything about expanding the cemetery.

Further, the trial court misapplied the law in finding these deeds expanded the cemetery. Section 214.080 governs proceedings to enlarge a cemetery in Missouri. This statute provides:

> Whenever it shall become absolutely necessary to enlarge any public burial ground or cemetery, and when **the public, to the number of five or more persons, interested in the enlargement of said burial grounds**, and the owner or owners of the adjoining land, cannot agree as to the price to be paid for the same . . . the public, to the number of five or more persons, **may proceed to condemn the same**, in the same manner as provided by law for condemnation, appropriation and valuation . . . and **on such condemnation, and the payment of the appraisement as therein provided, the title of such land shall vest in the public for the purposes and uses only for which it was taken**.

Section 214.080 (emphasis added). Thus, for Respondents to have expanded the cemetery, as the trial court found, there would have had to be "five or more" members of the public, those five or more would have had to "proceed to condemn" Appellant's two acres, and they would have had to pay Appellant the "appraisement" of those acres. None of that occurred here.

15

Thus, we find the trial court misapplied the law in finding Respondents' had expanded the original public cemetery to comprise Appellant's two acres, and that title was vested in the public because of it.  Peculiarly, the Petition never even requested the trial court make such a finding.  And as we will discuss in our analysis of Appellant's next point, Respondents' argument that they adversely possessed these 2.11 acres is without merit.  Therefore, there is no legal theory by which the trial court could vest title to Appellant's 2.11 acres in the public.  Appellant's fifth point is granted.

Point 6:  Respondents did not Adversely Possess Appellant's Land

Appellant's final point alleges the trial court erred in quieting title to Appellant's land based on adverse possession, because the elements of adverse possession were not established.  We agree.

To acquire title by adverse possession, possession must be "(1) hostile, that is under a claim of right, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous for the necessary period of years . . . ."  Watson, 298 S.W.3d at 526.  In Missouri, the possession must be for ten years.  Evella, LLC, 554 S.W.3d at 508.  For the possession to be hostile under a claim of right, the claimant must occupy the land "with the intent to possess it as her own."  Brinner v. Huckaba, 957 S.W.2d 491, 494 (Mo. App. E.D. 1997); see also Flowers v. Roberts, 979 S.W.2d 465, 469 (Mo. App. E.D. 1998).  Whether possession is hostile or under a claim of right is a question of intent.  Brinner, 957 S.W.2d at 494.  The party claiming adverse possession bears the burden of proving each element by a preponderance of the evidence, and a claimant's failure to establish any element defeats the claim.  Creech v. Noyes, 87 S.W.3d 880, 885 (Mo. App. E.D. 2002).

The trial court found Respondents had adversely possessed Appellant's 2.11 acres because of their conduct after Claude Stephens's death.  Since Claude's death in 1989, and from

16

1989 until at least 2012, Maurice took over his father's duties with regards to the cemetery. Maurice handled the cemetery bank account, he was the contact for family members and the public concerning burials and grave site locations, he organized the maintenance, repairs, and improvements of the cemetery, and he organized the annual "cleanup day" for the cemetery. Maurice even directed where the flagpole in the cemetery would be located. Appellant does not dispute that any of these actions happened. However, these actions did not equate to Respondents adversely possessing these 2.11 acres.

The trial court found these actions sufficient to adversely possess Appellant's land. However, this was a misapplication of the applicable law, because Respondents have failed to show this "possession" was hostile under a claim of right. To meet that element, the claimant must occupy the land "***with the intent to possess it as her own***." Any act of occupation or possession by Respondents was not done with such intent. Everything Maurice did in managing the cemetery was done with the intent to better the cemetery, like organizing the cemetery cleanup day. None of Respondents intended to possess this land for themselves. Whether possession was hostile under a claim of right is purely a question of intent, and here that intent was lacking. Brinner, 957 S.W.2d at 494. Additionally, as we discussed in our analysis of Appellant's first point, the Corporation could not have possibly adversely possessed Appellant's land, because it was in existence for only a few months, as opposed to the requisite ten-year period.

Therefore, the trial court misapplied the law in finding Respondents adversely possessed Appellant's 2.11 acres, because Respondents have not met their burden of showing all of the elements of adverse possession by a preponderance of the evidence. Noyes, 87 S.W.3d at 885. Appellant's sixth point is granted.

17

### III. Conclusion

The trial court's judgment is reversed and remanded. On remand, the trial court will enter judgment in favor of Appellant as set forth in this opinion.

_____
ROY L. RICHTER, Judge

Lisa P. Page, P.J., concurs.
Mary K. Hoff, J., concurs