IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT

 LYNN SCHIEVE, Individually and as a )
 Member of the Carroll Meyer Family )
 Limited Liability Company, LLC, )
 )
 WD83700
 Respondent, )
 v. )
 OPINION FILED:
 )
 June 1, 2021
 )
 JOHN MEYER, )
 )
 Appellant. )

 Appeal from the Circuit Court of Clay County, Missouri
 The Honorable David P. Chamberlain, Judge

 Before Division Two: Mark D. Pfeiffer, Presiding Judge, and
 Alok Ahuja and Karen King Mitchell, Judges

 John Meyer appeals, following a bench trial, a judgment in the amount of $205,982.55 plus

court costs entered against him in favor of Lynn Schieve on her claim that Meyer, as acting

manager of the Carroll Meyer Family Limited Liability Company, breached his fiduciary duty to

the members of the LLC by taking the LLC’s money for his own personal use and failing to issue

distributions required by the LLC’s Operating Agreement. Meyer raises three points on appeal.

He argues first that Schieve lacked standing to bring a direct claim against Meyer and that she

could proceed only in a derivative action on behalf of the LLC, rather than as an individual
member. Second, he argues that there was no substantial evidence to support the trial court’s

finding that Meyer owed any duties for which he could be personally liable. And, finally, he argues

that the court misapplied the law in awarding Schieve attorneys’ fees. Finding no error, we affirm.

 Background

 On November 3, 2010, siblings John Meyer, Brad Meyer, and Lynn Schieve filed Articles

of Organization with the Missouri Secretary of State to start the Carroll Meyer Family Limited

Liability Company, LLC. Meyer, who was both a member and the manager of the LLC, owned

39.1666 percent of the LLC, and Brad and Schieve, both designated as members, owned 30.4166

percent each.1

 On September 30, 2013, the LLC sold a tract of land in Iowa to Hy-Vee for $640,000, with

net proceeds in the amount of $609,849.85; both the contract and the payments were written in the

LLC’s name. Meyer, Brad, and Schieve held discussions about how to distribute the funds, and

Meyer initially suggested funneling 95% of the money through another business of his (The

Classic Cup) to get a tax credit. Both Brad and Schieve were opposed, believing that Meyer’s

suggestion would constitute tax fraud; this opposition led to a rift in the family, and Meyer stopped

communicating with Brad and Schieve. On November 7, 2013, Schieve sent an email to Meyer,

demanding that he distribute the proceeds from the Hy-Vee land sale. Schieve and Brad, acting as

members holding a majority interest, subsequently drafted a declaration in the LLC’s name,

directing Meyer—as the manager—to distribute the funds by December 31, 2013. Meyer never

distributed the funds.

 On December 31, 2013, Schieve and Brad, acting as members with a majority interest,

issued a resolution freezing the LLC’s bank account unless transactions were approved by a

 1
 To avoid confusion, Brad Meyer will be referred to by his first name. No familiarity or disrespect is
intended.

 2
majority of the members. In response, Meyer began threatening Schieve with tax penalty

payments if they did not unfreeze the account, so Schieve and Brad agreed to lift the freeze. On

March 12, 2014, Meyer wrote a check for $50,000 from the LLC to The Classic Cup, designating

the funds as a loan repayment. But the LLC had never taken a loan from The Classic Cup.

 On October 14, 2014, Schieve and Brad sent Meyer a letter demanding an accounting from

the LLC no later than October 31, 2014, as Meyer still had not disbursed the proceeds from the

Hy-Vee sale. On October 15, 2014, Meyer wrote two checks from the LLC account; one went to

the Treasurer for the State of Iowa in the amount of $8,603.00 and the other went to the United

States Treasury in the amount of $20,204.00, both for payment of Meyer’s personal taxes. On

November 3, 2014, in response to the demand for an accounting, Meyer sent Schieve an email

stating, “I recently returned from my annual camping trip to find your letter. It is apparent that

you have yet to understand that all of the money that went into the LLC belongs to the Meyer

Family Partnership.”2 Meyer further indicated that there was no money in the LLC and that the

LLC had never purchased or been gifted any property (contrary to the multiple quitclaim deeds

showing property transferred from the Meyer Family Partnership to the LLC before the Hy-Vee

land sale).

 On March 25, 2015, a $200,000 check issued from the LLC account to a holding company

for CrossFirst Bank, where Meyer held accounts. On March 21, 2016, a cashier’s check in the

amount of $109,444.35, payable to Meyer, was issued from the LLC account, bringing its balance

to zero and closing the account. Neither Schieve nor Brad knew anything about or authorized

either of these payments. Schieve and Brad contacted CrossFirst Bank and explained to them that

 2
 The Meyer Family Partnership included Carroll Meyer (the patriarch), John Meyer, Brad Meyer, Lynn
Schieve, and Scott Meyer (another sibling). At the time of Meyer’s November 3, 2014 letter, Schieve owned 8.5% of
the Meyer Family Partnership. The partnership predated the LLC.

 3
Meyer had not been authorized to take the $200,000 from the LLC that he had deposited at

CrossFirst. CrossFirst indicated they did not wish to be involved and insisted Meyer take the

money out.

 On November 3, 2017, Meyer created a new bank account at Country Club Bank in the

LLC’s name and deposited $224,500 in the new account.3 On November 6, 2017, Meyer withdrew

$224,480 from the LLC account and closed it. Schieve emailed back and forth with Meyer in

various attempts to resolve the dispute without avail.

 Schieve filed suit, individually and as a member of the LLC, against Meyer in Clay County

on January 12, 2018. Schieve’s petition alleged a breach of fiduciary duty, conversion, breach of

contract, and unjust enrichment. Following a bench trial, the court entered judgment in favor of

Schieve, finding that Meyer “breached his fiduciary duty to the two members of the LLC, including

[Schieve], when he took the LLC’s money for his own personal use and benefit while not issuing

the required distributions per the LLC’s Operating Agreement.” The court awarded Schieve

$165,982.55 in damages and $40,000 in attorneys’ fees. Meyer appeals.

 Analysis

 Meyer raises three points on appeal. First, he argues that the trial court misapplied the law

in entering judgment in favor of Schieve because Schieve lacked standing to bring her claims

individually in a direct action rather than on behalf of the LLC in a derivative action. Second, he

argues that the trial court lacked substantial evidence to support its finding that Meyer owed any

duties to Schieve for which he could be personally liable. And, finally, Meyer argues that the court

misapplied the law in awarding Schieve attorneys’ fees because, he claims, they were not

authorized by the Operating Agreement.

 3
 This amount represented both the $200,000 Meyer initially deposited with CrossFirst, along with interest
accrued on the CrossFirst account.

 4
 “Our review of a court-tried case is governed by Murphy v. Carron, 536 S.W.2d 30, 32

(Mo. banc 1976).” In Their Representative Capacity as Trs. for Indian Springs Owners Ass’n v.

Greeves, 277 S.W.3d 793, 797 (Mo. App. E.D. 2009). “We will affirm the trial court’s judgment

unless it is not supported by substantial evidence, it is against the weight of the evidence, it

erroneously declares the law, or it erroneously applies the law.” Id.

 I. Meyer failed to preserve his challenge to Schieve’s petition.

 In his first point, Meyer argues that Schieve lacked standing to bring suit individually in a

direct action insofar as the claims she raised could be brought only on behalf of the LLC in a

shareholder’s derivative action. His entire argument is based on the premise that Schieve failed to

raise her claims on behalf of the LLC. There are two flaws in this argument, however. First,

Schieve’s petition plainly raised each of her claims both in her individual capacity and on behalf

of the LLC in her capacity as a member; thus, Meyer’s first point is based on a factual inaccuracy.4

And, second, Meyer failed to identify any flaws in Schieve’s petition below and, therefore, his

claim is not reviewable.

 To begin, Schieve’s petition very plainly states in multiple places that she was seeking

relief both individually and on behalf of the LLC. The caption itself identifies the Plaintiff as

“LYNN SCHIEVE, Individually and as a Member of the Carroll Meyer Family Limited Liability

Company, LLC.” Paragraph 5 of the petition states, “Plaintiff has filed this lawsuit and submits

the causes of action set forth below both individually and on behalf of the Carroll Meyer Family

Limited Liability Company, LLC.” Paragraphs 15, 25, 36, and 47 all allege that Schieve demanded

that Meyer either return the money to the LLC or pay her as required under the Operating

 4
 Meyer does not argue that raising both individual claims and those on behalf of the LLC in the same petition
was improper. And we see no reason that it would be. See, e.g., Dawson v. Dawson, 645 S.W.2d 120, 125 (Mo. App.
W.D. 1982) (plaintiff brought claims both individually and as a shareholder derivative action in a single petition).

 5
Agreement. And Paragraphs 17, 30, 41, and 49 all allege injury and damages to both Schieve and

the LLC from Meyer’s alleged misconduct. In light of the plain language of Schieve’s petition,

Meyer’s claim that Schieve failed to raise claims on behalf of the LLC is factually inaccurate.5

 Because Schieve did, in fact, raise the claims on behalf of the LLC, it seems that Meyer’s

true complaint is that Schieve failed to raise the claims properly. But Meyer made no such

complaint to the trial court.

 In his brief, Meyer argues that Schieve’s petition utterly fails to comply with the

requirements of Rule 52.09, governing petitions for derivative actions by shareholders.6 Though

Meyer’s answer generally asserted that Schieve’s petition failed to state a claim, he neither

mentioned Rule 52.09’s requirements nor sought any relief for this alleged failure (e.g., a motion

to dismiss). And no claim of error related to any deficiency in the petition was raised in his motion

for new trial.

 “It is well recognized that a party should not be entitled on appeal to claim error on the part

of the trial court when the party did not call attention to the error at trial and did not give the court

the opportunity to rule on the question.” Brown v. Brown, 423 S.W.3d 784, 787 (Mo. banc 2014)

(quoting Niederkorn v. Niederkorn, 616 S.W.2d 529, 535 (Mo. App. E.D. 1981)). “This

requirement is intended to eliminate error by allowing the trial court to rule intelligently and to

 5
 At oral argument, Meyer suggested that Schieve abandoned the claims on behalf of the LLC at trial. We
disagree. There is nothing in the transcript to support Meyer’s suggestion.
 6
 All rule references are to the Missouri Supreme Court Rules (2019) unless otherwise noted. Rule 52.09
addresses the requirements for derivative actions brought by one or more members “to enforce a right of a corporation”
where the corporation fails “to enforce a right that may properly be asserted by it.” There are four requirements for
the petition: (1) it must be verified; (2) it must allege “that the plaintiff was a . . . member at the time of the transaction
of which there is a complaint”; (3) it must allege “with particularity the efforts, if any, made by the plaintiff to obtain
the action desired from the directors or comparable authority”; and (4) it must allege “the reasons for the failure to
obtain the action.” Rule 52.09. It appears that Schieve’s petition made all the necessary allegations, though it was
not verified. But “[t]he absence of verification is effectively cured by the judgment following the hearing.” In re
Estate of Basler v. Delassus, 690 S.W.2d 791, 795 (Mo. banc 1985) (evaluating a claim of error under the probate
code based upon the lack of verification).

 6
avoid ‘the delay, expense, and hardship of an appeal and retrial.’” Id. at 787-88 (quoting Pollard

v. Whitener, 965 S.W.2d 281, 288 (Mo. App. W.D. 1998)). This “purpose is defeated if the error

receives its first review in the appellate court.” Pollard, 965 S.W.2d at 288.7

 Though Rule 78.07(b) says that a party is not required to file a motion for new trial in a

bench-tried case, it also “clearly states, in order for a matter to be preserved for our review, it must

have been presented to the trial court.” Carmack v. Carmack, 603 S.W.3d 900, 909 n.7 (Mo. App.

W.D. 2020). And “[c]ompliance is particularly essential for procedural claims that the trial court

could have remedied if given the chance.” In re I.K.H., 566 S.W.3d 629, 632 (Mo. App. S.D.

2018). “We should not consider nonjurisdictional matters that might have been cured if raised in

the trial court.” In re Horton’s Estate, 606 S.W.2d 792, 794 (Mo. App. S.D. 1980); see also Hart

v. Skeets, 145 S.W.2d 143, 145 (Mo. 1940) (“It is an established general rule that an appellate court

will not consider objections raised for the first time on appeal concerning matters which, if raised

in the lower court, might have been cured by amendment.” (quoting Hartford Fire Ins. Co. v.

Bleedorn, 132 S.W.2d 1066, 1070 (Mo. App. 1939)). In this particular case, if Meyer had raised

below the issue he argues in his brief, Schieve could have amended her petition to correct what

Meyer now suggests are pleading deficiencies under Rule 52.09.

 “Apart from questions of jurisdiction of the trial court over the subject matter . . . , no

allegations of error shall be considered in any civil appeal except such as have been presented to

 7
 Meyer contends that, because his claim is one of standing, it did not need to be raised below and can be
raised at any time. For support, he cites Chastain v. Geary, 539 S.W.3d 841, 848 (Mo. App. W.D. 2017), where this
court stated, “the court does not have subject matter jurisdiction to decide substantive issues if the party lacks
standing.” The most recent Missouri Supreme Court decision on standing indicates that it is “better understood as a
matter of justiciability, that is, of a court’s authority to address a particular issue when the party suing has no justiciable
interest in the subject matter of the action.” Schweich v. Nixon, 408 S.W.3d 769, 774 n.5 (Mo. banc 2013). And
“[j]usticiability is a ‘prudential’ rather than a jurisdictional doctrine.” Id. at 773. But we need not address Meyer’s
claim that he was not required to raise a standing claim below because the true nature of Meyer’s challenge is not to
Schieve’s standing but to the sufficiency of her petition. And because he failed to raise this claim below, we do not
address it here.

 7
or expressly decided by the trial court.” § 512.160.1, RSMo (2016).8 Though Meyer couches his

claim on appeal as a challenge to Schieve’s standing, his true complaint is that her petition failed

to comply with the dictates of Rule 52.09—an alleged error that could have been corrected by

amendment if Meyer had raised the claim below. Because he failed to preserve that claim by not

presenting it to, and getting a decision from, the trial court, we will not review it on appeal.

 Point I is denied.

 II. There was substantial evidence to support the court’s finding that Meyer owed a
 fiduciary duty to Schieve.

 In his second point on appeal, Meyer argues that there was not substantial evidence to

support the trial court’s determination that Meyer owed any duties to Schieve for which he could

be personally liable. We disagree.

 “Substantial evidence is evidence that, if believed, has some probative force on each fact

that is necessary to sustain the circuit court’s judgment.” Ivie v. Smith, 439 S.W.3d 189, 199 (Mo.

banc 2014). “Evidence has probative force if it has any tendency to make a material fact more or

less likely.” Id. “When reviewing whether the circuit court’s judgment is supported by substantial

evidence, appellate courts view the evidence in the light most favorable to the circuit court’s

judgment and defer to the circuit court’s credibility determinations.” Id. at 200. “To prevail on

the substantial-evidence challenge, [the appellant] must demonstrate that there is no evidence in

the record tending to prove a fact that is necessary to sustain the circuit court’s judgment as a

matter of law.” Id.

 8
 Section 512.160.1 also refers to “the sufficiency of pleadings to state a claim upon which relief can be
granted” as a question that may be considered on appeal without having been presented to or decided by the trial court.
This defense, however, “may no longer be raised for the first time on appeal, and must now be raised in any pleading
permitted by Rule 55.01, or by a motion for judgment on the pleadings” before it may be considered on appeal.
Stephens Cemetery, Est. 1864, Inc. v. Tyler, 579 S.W.3d 299, 305 (Mo. App. E.D. 2019) (analyzing a claim that the
plaintiffs failed to state a claim insofar as they failed to allege adequate facts to support their standing to sue).

 8
 “When breach of fiduciary duty is asserted as a tort claim, as here, the proponent must [1]

establish that a fiduciary duty existed between it and the defending party, [2] that the defending

party breached the duty, and [3] that the breach caused the proponent to suffer harm.” Hibbs v.

Berger, 430 S.W.3d 296, 312 (Mo. App. E.D. 2014) (quoting Zakibe v. Ahrens & McCarron, Inc.,

28 S.W.3d 373, 381 (Mo. App. E.D. 2000)). Here, Meyer argues that the trial court’s finding that

Meyer owed Schieve a fiduciary duty was not supported by substantial evidence.

 The trial court found that Meyer, “as Managing Member of the LLC, owed a fiduciary duty

to the other two members of the LLC, including” Schieve. Meyer does not challenge the fact that

he was the managing member of the LLC or that Schieve was a member of the LLC. He also

acknowledges that, generally, “the manager of an LLC owes the members fiduciary duties.”9 He

argues, however, that “the law of Missouri allows the LLC’s articles and operating agreement to

restrict those duties and limit or annul his liability to the members for their damages for actions he

took as the LLC’s manager.”10 He then argues that the LLC’s Operating Agreement precluded the

court from finding him liable “to any other member for a debt, obligation or liability of the LLC,

or for any loss, damage, liability, or expense the members suffered on account of any action he

took or failed to take as manager.”

 Section 5.12(a) of the Operating Agreement addresses the limits of liability, and it states

in relevant part:

 No Person shall be liable to the . . . Members for any loss, damage, liability or
 expense suffered by the Company or its Members on account of any action taken
 or omitted to be taken by such Person as a Manager of the Company . . . , if such
 Person discharges such person’s duties in good faith, exercising the same degree

 9
 Indeed, the law in Missouri is that “managers (member or nonmember managers) [] owe members of the
LLC fiduciary duties[] as a matter of law by virtue of the manager and member relationship.” Hibbs v. Berger, 430
S.W.3d 296, 316 (Mo. App. E.D. 2014).
 10
 This assertion is also legally accurate: “Missouri’s Limited Liability Company Act grants limited liability
companies the power to effectively limit or define the scope of the fiduciary duties imposed upon an LLC’s members
and managers.” Hibbs, 430 S.W.3d at 316.

 9
 of care and skill that a prudent person would have exercised under the
 circumstances in the conduct of such prudent person’s own affairs, and in a manner
 such person reasonably believes to be in the best interest of the Company.

(Emphasis added.) Notably, Meyer’s argument glosses over the italicized portion of the Operating

Agreement. Meyer argues that, because the Operating Agreement incorporated the LLC’s Articles

of Organization, which did not include a “carve-out for acts that ‘constitute bad faith, fraud, gross

negligence, willful misconduct or breach of fiduciary duty,’” Meyer was not liable for actions

taken as Manager, even if done in bad faith or constituting a breach of fiduciary duty. The Articles

of Organization provide:

 No . . . Manager, solely by reason of being a . . . Manager, . . . shall be liable, under
 a judgment, decree or order of a court, or in any manner, . . . for the acts or omissions
 of any other Member, Manager, agent or employee of the Company.

(Pl. Ex. 1).

 This provision of the Articles of Organization tracks the language of § 347.057, which has

been held to preclude individual liability for a manager of an LLC based on the acts of the LLC.

See JB Contracting, Inc. v. Bierman, 147 S.W.3d 814, 819 (Mo. App. S.D. 2004) (holding that

§ 347.057 precluded relief where “Respondents failed to allege and prove facts necessary to hold

Bierman individually liable for the acts of the limited liability company owned by him” insofar as

“they fail[ed] to show how Bierman was benefited individually, and not as a member of a limited

liability company.”); see also Allstate Ins. Co. v. Head, 2:17-CV-04169-NKL, 2018 WL 454586,

at *2 (W.D. Mo. Jan. 17, 2018) (holding that, under § 347.057, where a breach of contract claim

against the manager of an LLC was “not based solely on the grounds that he is a member or

manager of [the] LLC, . . . [it] may be brought against [the manager] individually, notwithstanding

the Missouri Limited Liability Company Act.”). Thus, contrary to Meyer’s suggestion, the

 10
Articles of Organization do not preclude individual liability for a manager where liability is

premised on acts of the manager benefiting himself, rather than the LLC.

 Meyer insists that, even setting aside the Articles of Organization, there is no carve-out for

“bad faith” in the Operating Agreement. Though he is correct that there is no mention of the phrase

“bad faith” in the Operating Agreement, he glosses over the fact that it affirmatively requires the

Manager to act in “good faith” to avoid liability. And, here, the trial court found that Meyer “took

the LLC’s money for his own personal use and benefit while not issuing the required distributions

per the LLC’s Operating Agreement.” This conduct evidences a lack of good faith. And the

Operating Agreement limits a manager’s liability only insofar as he acts in good faith.

 Section 347.088.3 provides that the manager of an LLC holds funds as a trustee “from any

personal use by [the manager] of the property of the [LLC] . . . entrusted to him as a result of his

status as manager.” “This provision codifies for Missouri LLCs the duty of loyalty, with its

attendant prohibition against self-dealing, which is one of the pillars of American corporate

governance.” In re Tri-River Trading, LLC, 329 B.R. 252, 264 (B.A.P. 8th Cir. 2005), aff’d

sub nom. DeBold v. Case, 452 F.3d 756 (8th Cir. 2006). “[I]t is certain that, as a general

proposition, neither the executive officers nor the directors of an incorporated company have a

right to convert its assets to their own use, or give them away, or make any self-serving disposition

of them against the interest of the company.” Zakibe, 28 S.W.3d at 383 (quoting Emergency

Patient Servs., Inc. v. Crisp, 602 S.W.2d 26, 28 (Mo. App. W.D. 1980)).

 Here, the Operating Agreement shielded Meyer from liability only if he acted in good faith.

Because he did not act in good faith, he is not shielded from liability, and the ordinary fiduciary

duties attendant to his position as manager apply. In short, there was substantial evidence to

 11
support the trial court’s finding that Meyer, acting as manager of the LLC, owed a fiduciary duty

for which he could be personally liable to Schieve, a member of the LLC.

 Point II is denied.

 III. The attorneys’ fees awarded to Schieve were authorized by the LLC Operating
 Agreement.

 In his final point, Meyer argues that the trial court misapplied the law in granting Schieve

$40,000 in attorneys’ fees because the Operating Agreement did not provide for them under the

facts of this case.

 “Whether a trial court has authority to award attorneys’ fees is a question of law which we

review de novo.” St. Louis Title, LLC v. Talent Plus Consultants, LLC, 414 S.W.3d 24, 26 (Mo.

App. E.D. 2013). “Under the ‘American Rule,’ orders requiring one party to pay another party’s

attorney’s fees or other expenses ordinarily are not permitted unless the parties’ contract or a

statute authorizes the court to make such an award.” Garland v. Ruhl, 455 S.W.3d 442, 446 (Mo.

banc 2015). “If a contract provides for the payment of attorneys’ fees and expenses incurred in

the enforcement of a contract provision, the trial court must comply with the terms of the contract

and award them to the prevailing party.” WingHaven Residential Owners Ass’n, Inc. v. Bridges,

457 S.W.3d 383, 385 (Mo. App. E.D. 2015).

 Here, section 9.15 of the LLC’s Operating Agreement provided the following with respect

to “Remedies”:

 In the event that any dispute arises with respect to the enforcement . . . of this
 Agreement and court proceedings are instituted to resolve such dispute, the
 prevailing party in such court proceedings shall be entitled to recover from the
 non-prevailing party all costs and expenses, including, but not limited to,
 reasonable attorneys’ fees, incurred by the prevailing party in such court
 proceedings.

 12
Meyer argues that this section does not allow for attorneys’ fees because “the only ‘parties’ to the

Agreement were [Meyer], Brad, and [Schieve] as members,” and, because Schieve sued Meyer as

an individual, rather than as either a member or manager, he was not a “party” as contemplated by

§ 9.15. We disagree.

 There are two provisions for attorneys’ fees in § 9.15: the one identified above and the

following:

 In the event of a default by any party in the performance of any obligation
 undertaken in this Agreement, in addition to any other remedy available to the
 non-defaulting parties, the defaulting party shall pay to each of the non-defaulting
 parties all costs, damages, and expenses, including reasonable attorneys’ fees,
 incurred by the non-defaulting parties as a result of such default.

Though Meyer’s argument (that “party” as used in § 9.15 refers only to parties to the Operating

Agreement) might be plausible for the provision dealing with defaulting parties, it does not appear

so limited with respect to the “prevailing party” provision.11 “A prevailing party is one that

succeeds on any significant issue in the litigation which achieved some of the benefit the parties

sought in bringing suit.” Dixson v. Mo. Dep’t of Corr., 586 S.W.3d 816, 831 (Mo. App. W.D.

2019) (quoting Mignone v. Mo. Dep’t of Corr., 546 S.W.3d 23, 45 (Mo. App. W.D. 2018)). And,

here, Schieve plainly was the prevailing party in the suit. As such, she was entitled to attorneys’

fees under the plain language of § 9.15 of the LLC’s Operating Agreement, and the trial court was

required to award them.12

 Point III is denied.

 11
 There is no special definition for “party” as used in the LLC’s Operating Agreement.
 12
 Schieve has filed a motion for attorneys’ fees on appeal under the same provision of the LLC’s Operating
Agreement. We hold that she is entitled to attorneys’ fees under the Operating Agreement and remand for the limited
purpose of allowing the trial court to calculate an appropriate amount for the award.

 13
 Conclusion

 The trial court did not err in entering judgment, including attorneys’ fees, in favor of

Schieve. Its judgment is affirmed. The matter is, however, remanded to the trial court for the

limited purpose of entering a judgment for attorneys’ fees on appeal pursuant to Schieve’s motion.

 Karen King Mitchell, Judge

Mark D. Pfeiffer, Presiding Judge, and Alok Ahuja, Judge, concur.

 14